UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARELL HARLOW,

                                        Plaintiff,

                                                                5:18-CV-01215

v.
                                                                (MAD/TWD)

ALLEN REBECCA HEARD, Syracuse Police
Department Officers JOHN DOE # 1-3 and JANE
DOE #4, Syracuse Police Chief FRANK FOWLER,
CITY OF SYRACUSE,
                                        Defendants.
_____

APPEARANCES:

DARELL HARLOW
18-B-1614
Plaintiff pro se
Attica Correctional Facility
Box 149
Attica, New York 14011

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

The Clerk has sent to the Court for initial review the complaint in this 42 U.S.C. § 1983

civil rights action brought by *pro se* Plaintiff Darell Harlow against Defendants Allen Rebecca

Heard; Syracuse Police Department Officers, John Doe # 1-3 and Jane Doe #4; Syracuse Police

Chief, Frank Fowler; and the City of Syracuse.  (Dkt. No. 1.)  Plaintiff has also filed an

application to proceed *in forma pauperis* ("IFP Application").  (Dkt. No. 2.)

## I.    PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP

Application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's

IFP Application (Dkt. No. 2) is granted.

## II.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III.    COMPLAINT

Plaintiff alleges that at around 11:30pm on February 1, 2016, City of Syracuse police officers entered an apartment Plaintiff shared with Defendant Allen Rebecca Heard ("Heard"), using a key provided to them by Heard, whom Plaintiff had not seen for a week.  (Dkt. No. 1 at 5.[1])  Plaintiff was fearful for his life when the police officers entered with guns and flashlights and a voice stated "[g]et your hands up or we will shoot."  *Id*.  Plaintiff placed his hands up as he lay in bed and begged "[d]on't shoot[ ] don't kill me."  *Id*.  Defendant police officers John Does #1 and #2 grabbed Plaintiff by his wrists and snatched him of the bed and onto the floor on his stomach.  *Id*.  Plaintiff noticed the presence of two more police officers, Defendants John Doe #3 and Jane Doe #4.  *Id*.  Plaintiff was only allowed to put his pants on and was arrested, taken outside to the paddy wagon with no shoes, socks, or shirt and was humiliated and cold.  *Id*. at 5-6.

Heard was standing outside with John Doe #3 and Jane Doe #4, and John Does #1 and #2 were in the paddy wagon with Plaintiff looking through his phone.  *Id*. at 6.  Plaintiff alleges he was arrested based on false statements against him by Heard and was charged with two counts of assault, criminal mischief, possession of a weapon (a vacuum cleaner), trespassing, and child endangerment.  *Id*.  According to Plaintiff, Heard called 911 on February 1, 2016, concerning earlier incidents in which Plaintiff had allegedly assaulted her, but told the 911 operator Plaintiff had done nothing on the date of the call, and Heard just wanted him out of the house.  *Id*. at 6-7.

---

[1]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Plaintiff contends the charges were based on false information provided by Heard.  (Dkt. No. 1 at 7.)

Plaintiff was taken to the Justice Center and booked on what he claims to have been false charges.  *Id*.  Plaintiff was arraigned on February 4, 2013, and appeared in court for a preliminary hearing on February 9, 2013.  *Id*.  Heard testified at the preliminary hearing that Plaintiff had assaulted her with a vacuum cleaner and another time with his hands and feet.  *Id*. at 8.  Heard also testified regarding Plaintiff destroying property with a hammer.  *Id*.  None of the Doe Defendants appeared at the preliminary hearing.  *Id*.  After the hearing, Plaintiff was released on $10,000 bond.  *Id*.

According to Plaintiff, pre-trial appearances were scheduled several times from February 2016 to January 2018, and neither Heard nor the Doe Defendants appeared.  False arrest complaints were filed on Plaintiff's behalf with the Citizens Review Board and with Defendant Syracuse Police Chief Fowler.  *Id*. at 8.  The charges were finally dismissed on or about January 11, 2018.  *Id*. at 9.

Plaintiff has asserted a § 1983 claim for false arrest based on an illegal search and seizure in violation of the Fourth Amendment against Heard and the Doe Defendants.  *Id*. at 9, 11. Plaintiff further claims that the Doe Defendants and Heard conspired to violate his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments in violation of 42 U.S.C. § 1983.  *Id.* at 9.  In addition, according to Plaintiff, Defendant City of Syracuse, the Syracuse Police Department, and Defendant Fowler "had actual and defacto policies, practices, customs and usage of failing to properly train, supervise, and discipline its Syracuse Police Officers concerning correct practices in conducting investigations, interviewing witnesses and informants,

5

assessing the credibility of witnesses and informants, the initiation of arrests, obligation not to promote or condone perjury or assist in the prosecution of innocent persons and the duty and obligation of candor toward the court."[2]  *Id*. at 10.  A liberal reading of Plaintiff's complaint suggests he is attempting to assert a supervisory liability claim against Fowler and a municipal liability claim against the City of Syracuse.

## IV.    ANALYSIS

### A.    Fourth Amendment False Arrest and Conspiracy Claims Against Heard and the Four Doe Defendants

A plaintiff may bring a § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable searches and seizures.  *Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  A Fourth Amendment claim for false arrest is substantially the same as a New York State law false arrest claim.  *Covington*, *id*; *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d. Cir. 2007).  "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003) (citation and internal quotation marks omitted).  The existence of probable cause is generally a complete defense to a § 1983 claim for false arrest and constitutes justification for the arrest.  *Weyant*, 101

---

[2]  The Syracuse Police Department has not been, nor could it as an administrative arm of the City of Syracuse be named as a Defendant in this civil rights action .  *See Jenkins v. Liadka,* No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant. . . .")

F.3d at 852.  However, if as Plaintiff alleges, planted evidence was the basis for his arrest, "officers accused of planting the evidence cannot assert probable cause as a reason to dismiss a complaint."  *Hill v. Melvin*, No. 05 Civ 6645 (AJP), 2006 WL 1749520, at *11 (S.D.N.Y. June 6, 2006)[3], *aff'd*, 323 F. App'x 61 (2d Cir. 2009).

In order to state a § 1983 claim, a plaintiff must allege that he was injured "by either a state actor or a private party acting under color of state law."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citation omitted).  To state a claim against a private individual on a § 1983 conspiracy theory, as Plaintiff is attempting to do with Heard in this case, the complaint must allege facts plausibly demonstrating that Heard, as a private individual, acted in concert with state actors John Does # 1-3 and Jane Doe # 4 to engage in the false arrest of Plaintiff in violation of his rights under the Fourth Amendment.  *See Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).  In order to state a § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Ciambriello,* 291 F.3d at 324-25.

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the allegations against Defendants Heard, John Does # 1-3 and Jane Doe #4 in Plaintiff's complaint regarding Heard's false allegations to the Defendant police officers, providing them with a key for two of them to enter Plaintiff's apartment to arrest him while two

---

[3] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

others waited outside with Heard, and both Heard and the police officers' complete failure to follow through in the prosecution against Plaintiff, with the exception of Heard's testimony at the preliminary hearing, provides the bare bones minimum necessary to require Heard, John Does #1-3, and Jane Doe #3 to respond to the § 1983 false arrest and conspiracy claims in Plaintiff's complaint. The Court, therefore, while expressing no opinion as to whether this claim can withstand a properly filed dispositive motion, recommends that those Defendants be required to respond to the complaint.

### B.    Chief Fowler and the City of Syracuse

The factual allegations regarding policies, practices, and customs relevant to the failure to properly train, supervise, and discipline the Doe Defendants suggest an attempt by Plaintiff to assert a claim against Fowler for supervisory liability. The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

8

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[4]

Vague and conclusory claims that Police Chief Fowler, as a supervisory official, has a policy of failing to provide proper training, supervision, and discipline to police officers under his charge, without specific facts showing personal involvement in Plaintiff's arrest, are legally insufficient to state a claim under any of the categories identified in *Colon*. *See Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011); *White v. Fischer*, No. 9:09-CV-240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (same).

Given the absence of facts showing Fowler's personal involvement in Plaintiff's arrest and the conclusory nature of Plaintiff's supervisory liability claim against him, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to

---

[4] The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

9

Plaintiff's *pro se* status.

        2.       <u>City of Syracuse</u>

A municipality is subject to suit pursuant to § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). However, in *Monell*, the Supreme Court found that "the language of [section] 1983, read against the background of the legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691. Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000); *accord Monell*, 436 U.S. at 691. Courts apply "rigorous standards of culpability and causation" to ensure that the municipality is not held liable solely for the actions of its employees. *Jeffes*, 208 F.3d at 61 (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). Thus, in order for an individual whose constitutional rights have been violated to have recourse against a municipality under § 1983, he must show that he was harmed by a municipal "policy" or "custom." *Monell*, 436 U.S. at 690-91. To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." *Tuttle*, 471 U.S. at 823.

A municipal "policy" can include an officially promulgated policy, i.e., a formal act by a municipality's governing body, *Monell*, 436 U.S. at 690, or an act taken by a municipal employee who, as a matter of State law, has final policy making authority in the area in which the action was taken. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986); *Walton v. Safir*, 122 F. Supp. 2d 466, 477 (S.D.N.Y. 2001) ("[T]he act of an official with final decision-making

authority, if it wrongfully causes the plaintiff's constitutional injury, may be treated as the official act of the municipality.").  A municipal "custom" need not receive formal approval by the appropriate decisionmaker: "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability *on the theory that the relevant practice is so widespread as to have the force of law*."  *Brown*, 520 U.S. at 404 (emphasis added).

Plaintiff has failed to allege facts plausibly showing that his alleged injuries were caused by any identified custom or policy of the City of Syracuse, or any failure of the City's part to properly train, supervise, and discipline police officers.  Even when a plaintiff is proceeding *pro se* "bare allegations of the existence of a custom or policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim." *Youngblood v. City of New York*, No. 15 CIV 3541 (AT)(HBP), 2016 WL 3919650, at * 5 (S.D.N.Y. June 27, 2016).  Therefore, the Court recommends that Plaintiff's § 1983 claim against the City of Syracuse also be dismissed for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** against Defendants Syracuse Police Chief Fowler and the City of Syracuse on initial review under 28 U.S.C. § 1915(e), except that Chief Fowler remain listed as a Defendant solely for service and discovery purposes with regard to the Doe Defendants until such time as the District Court orders otherwise; and it is further

**RECOMMENDED** that Plaintiff's § 1983 Fourth Amendment false arrest and conspiracy claims against Defendants Heard, and John Does #1-3, and Jane Doe #4 **SURVIVE** initial review and require a response; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court. __FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW__.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: November 7, 2018
            Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

***MEMORANDUM DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.
(Dkt.Nos.2, 3, 4.) [1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are

*sua sponte* dismissed without prejudice and with leave to
amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

**I. RELEVANT BACKGROUND**

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.) [2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See
generally* Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

**II. MOTION TO PROCEED *IN FORMA PAUPERIS***

Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this
action *in forma pauperis.* (Dkt. No. 2.)

**III. *SUA SPONTE* REVIEW OF PLAINTIFF'S
COMPLAINT**

In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis,* "(2) ... the court shall
dismiss the case at any time if the court determines that
—... (B) the action ... (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

**A. Governing Legal Standard**

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–

61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the

Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15– 16 (N.D.N.Y. filed Nov. 18, 2009).[7]

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

**\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that

Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily

committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible

connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at \*9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that*

*may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at \*2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at \*2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at \*2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future

wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case,

the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED** **without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED** **without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis,

Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

Footnotes

1    This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).

The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2    At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3    The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

4    *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5    *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

7    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

8    Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

9    Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

10   The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not

an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

11      *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12      *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13      *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

14      For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15      Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

---

**End of Document**                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1749520
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Demetrius HILL, Plaintiff,
v.
Correction Officers A. MELVIN, V. Amir,
Ms. Wilson & Captain Eck, Defendants.

No. 05 Civ. 6645(AJP).
|
June 27, 2006.

**Attorneys and Law Firms**

Demetrius Hill, Dannemora, NY, pro se.

Basil Constantine Sitaras, New York City Law Depart.
Office Of The Corporation Counsel, New York, NY, for
Defendant.

*OPINION AND ORDER*

ANDREW J. PECK, United States Magistrate Judge.

 **\*1** Pro se plaintiff Demetrius Hill brings this action
pursuant to 42 U.S.C. § 1983, alleging false arrest,
malicious prosecution, and denial of religious freedom.
(Dkt. No. 2: Compl.)

Presently before the Court is defendants' summary
judgment motion. (Dkt. No. 27: Defs. Notice of Motion,
Defs. Rule 56.1 Stmt. & Sitaras Aff.; Dkt. No. 28: Defs.
Br.; Dkt. No. 36: Defs. Reply Br.) Hill has opposed the
motion. (Dkt. No. 35: Hill Rule 56.1 Stmt., Br. & Aff.)
The parties have consented to decision of this case by a
Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt.
No. 16.)

For the reasons set forth below, defendants' summary
judgment motion is GRANTED as to the denial of
religious freedom claim as to all defendants, the malicious
prosecution claim as to all defendants, and the false arrest
claim as to Correction Officers Amir and Wilson, and
DENIED as to the false arrest claim against Correction
Officer Melvin and Captain Eck. [1]

FACTS

Processing at the Vernon C. Bain Center at Rikers Island
On July 28, 2001, Demetrius Hill was processed into the
Vernon C. Bain Center ("V.C.B.C.") on Rikers Island.
(Dkt. No. 35: Hill Rule 56.1 Stmt. Att.: Hill Aff. at 8; Dkt.
No. 27: Defs. Rule 56.1 Stmt. ¶ 8.) Captain Raymond Eck
was a supervisor at the V.C.B.C. Intake area. (Dkt. No.
14: Answer ¶ 5; Hill Aff. at 8-9.) [2]

According to Hill, he and other prisoners complained
about being held in the holding cells for hours without
food or a place to sit or sleep. (Hill Aff. at 8.) According
to Hill, Correction Officer Melvin threatened to confiscate
Hill's (and another inmate's) property, including religious
medallions, if they "did not 'shut up .' " (*Id.*) Hill
threatened to sue for mistreatment and requested to file a
grievance about his religious medallion. (*Id.; see* Hill Rule
56.1 Stmt. ¶ 14.) According to Hill, Correction Officers
Melvin, Amir and Wilson and Captain Eck "whispered"
amongst themselves, pointed at Hill and said, " '[Y]ou['re]
going to lose all your shit today and after an ass whipping
you'll have something to sue about.' " (Hill Aff. at 8.)

According to Hill, he was removed from the holding cell
to be strip searched. (Hill Aff. at 8.) Correction Officer
Wilson took Hill's boots, watch, and gold chain (the
"religious medallion"). (Defs. Rule 56.1 Stmt. ¶ 6; Dkt.
No. 27: Ex. S [3] : Hill Dep. at 75; Hill Aff. at 8.) Hill
was given a pink receipt and was told that his property
would be returned to him after his release. (Hill Dep. at
76.) [4] Boots, jewelry, watches over $50, and non-plastic
religious crosses are not permitted inside the V.C.B.C. (Ex.
R: Wilson: *People v. Hill,* Trial Transcript ["Tr."] 303.)
Inmates may obtain plastic religious crosses from the jail's
clergy. (*Id.*) According to Hill, when he complained to
Captain Eck about his medallion being taken, the Captain
responded, " '[D]o what you're told or get your ass kicked.'
" (Hill Aff. at 8.)

 **\*2** At approximately 10:45 a.m. at Intake Area "B,"
Officer Melvin strip searched Hill. (Ex. G: Infraction
Rep.; Ex. H: Infraction Notice; Ex. I: Capt. Eck Rep.; Ex.
J: Incident Report Form; Hill Aff. at 8.) Posters on the
wall at the V.C.B.C. intake area informed prisoners that
possession of weapons will result in arrest. (Defs. Rule
56.1 Stmt. ¶ 7; Ex. R.: Melvin: Tr. 43-44.) Hill passed

naked through the metal detector and his clothes were passed through an x-ray machine. (Hill Aff. at 8; Ex. G: Infraction Rep.; Ex. H: Infraction Notice; Ex. J: Incident Report Form.) After Hill's clothes passed through the x-ray machine, Officer Melvin searched Hill's pants and produced a 1-1/4 inch single edge razor blade from the right-side pocket. (Defs. Rule 56.1 Stmt. ¶ 8; Ex. G: Infraction Rep.; Ex. H: Infraction Notice; Ex. I: Capt. Eck Rep.; Ex. J: Incident Report Form; Ex. K: Synopsis of Recovered Contraband; Hill Aff. at 8.)

According to Hill, C.O. Melvin planted the razor blade; Hill asserts that C.O. Melvin held the razor blade before searching Hill's pants and "reached into [Hill's] pocket and acted as if he withdrew a razor blade." (Hill Aff. at 8.) [5] Hill asserts that "the metal detector or x-ray machine made no indication that metal was in the pants and myself." (*Id.*) Hill also asserts that inmates Hareem Gillard and Derrick Felder looked at the x-ray machine monitor as Hill's clothes passed through and saw no weapons or "me[t]al outlines." (*Id.;* Ex. M: Hearing Report; Ex. N: Notice of Disciplinary Hearing Disposition.) [6] Officer Melvin, however, reported that he initially saw the razor blade on the x-ray machine as Hill's pants passed through. (Ex. G: Infraction Rep.; Ex. I: Capt. Eck Rep.; Ex. J: Incident Rep.)

Officer Melvin reported the infraction-that he had found a razor blade in Hill's pants pocket-to Captain Eck. (Defs. Rule 56.1 Stmt. ¶ 9; Ex. G: Infraction Rep.; Ex. I: Capt. Eck Rep.; Ex. J: Incident Rep.) On July 28, 2001, Hill was infracted for possession of contraband weapons, pursuant to Department of Correction Charge No. 103. 10, and referred to the Gang Intelligence Unit for re-arrest. (Defs. Rule 56.1 Stmt. ¶ 10; Ex. G: Infraction Rep.; Ex. H: Infraction Notice; Ex. K: Synopsis of Recovered Contraband; Hill Aff. at 9.) Captain Eck read Hill his legal rights. (Defs. Rule 56.1 Stmt. ¶ 11; Ex. L: Legal Rights Form Signed by Hill.)

On July 31, 2001, following a disciplinary hearing before Captain Edward Vinogroski, Hill received 90 days in punitive segregation. (Defs. Rule 56.1 Stmt. ¶ 12; Ex. M: Hearing Report; Ex. N: Hearing Disposition Notice; Hill Aff. at 7.) Hill was immediately placed on "Red I.D." status, an elevated prisoner classification. (Hill Rule 56.1 Stmt. ¶ 13; Hill Aff. at 9; Ex. N: Hearing Disposition Notice; Ex. O: Notice of Authorization for Initial Placement in Red ID Status; Ex. P: Notice of

Hearing Determination for Red ID and/or Enhanced Restraint Status.) [7]

**\*3** On July 31, 2001, Hill also was arrested on the possession of contraband charge. (Defs. Rule 56.1 Stmt. ¶ 14; Ex. B: Crim. Compl.; Hill Aff. at 9.) On August 23, 2001, Hill was indicted by a grand jury and charged with first degree promoting prison contraband pursuant to Penal Law § 205.25(2) and fourth degree criminal possession of a weapon, Penal Law § 265.01(2). (Defs. Rule 56.1 Stmt. ¶ 15; Ex. D: Grand Jury Indictment.)

Hill's Criminal Trial

Hill's criminal trial began on December 10, 2003 and concluded on December 19, 2003. (Defs. Rule 56.1 Stmt. ¶ 17; Ex. E: Exhibit Sheet; Ex. F: Verdict Sheet.) Captain Eck, Correction Officer Melvin, Correction Officer Maury Johnson, and Investigator Uriondo testified for the prosecution; Police Officer Scott Griczewicz, inmate Hareem Gillard, Correction Officer Amir, Correction Officer Wilson, Captain Eck, and Hill testified for the defense. ( *See* Defs. Rule 56.1 Stmt. ¶ 18; *see generally* Ex. R: Tr.)

Hill alleges, without supporting proof, that all four defendants perjured themselves at trial by stating that they did not recall the July 28, 2001 incident, that they did not recall other incidents that occurred that day, and that Officer Melvin found, as opposed to planted, the razor in Hill's pants. (Hill Rule 56.1 Stmt. ¶¶ 8, 12; Hill Aff. at 9; *see* Defs. Rule 56.1 Stmt. ¶ 20; Ex. R: Amir: Tr. 275, 286; Wilson: Tr. 298-99.)

At Hill's criminal trial, Correction Officers Amir and Wilson testified that they did not recall events occurring on July 28, 2001. (Defs. Rule 56.1 Stmt. ¶ 20; Hill Rule 56.1 Stmt. ¶ 8.) [8] The following are excerpts from C.O. Amir's and C.O. Wilson's testimony:

[MR. HIGGINS (Counsel for Hill) ]: Okay. Directing your attention to July 28th of 2001, did you work on that date?

[C.O. AMIR]: Well, like I told you earlier, I didn't recollect that information until you showed me the paperwork.

(Ex. R: Amir: Tr. 275.)

[MR. HIGGINS]: About how many incident reports have you written since July the 28th of 2001?

...

[C.O. AMIR]: Like I tell you, I work in a jail environment, okay. Anything could happen on any day. So, I can't specifically tell you how many or not.

(Ex. R: Amir: Tr. 286.)
[MR. HIGGINS]: You have no recollection of the incident that is written on the document?

[C.O. WILSON]: No, sir. I don't.

(Ex. R: Wilson: Tr. 303.)

On December 19, 2003, Hill was found not guilty. (Defs. Rule 56.1 Stmt. ¶ 17; Ex. F: Verdict; Hill Aff. at 9.)

Hill's Federal Complaint
On May 16, 2005, Hill signed his present federal § 1983 complaint asserting claims against Correction Officers Melvin, Amir and Wilson, and Captain Eck. (Dkt. No. 2: Compl., last page.) Hill's complaint was received by the Court's Pro Se Office on May 20, 2005. (Compl., 1st page.) The Court interprets Hill's pro se complaint as alleging three claims: (1) false arrest; (2) malicious prosecution; and (3) violation of Hill's religious freedom. *(See* Compl.) [9]

ANALYSIS

I. *SUMMARY JUDGMENT STANDARDS IN SECTION 1983 CASES* [10]
**\*4** Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986);

*Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See, e.g., Adickes v.. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. at 1356.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513; *see also, e.g., Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d at 36; *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d at 1223. The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987);

*Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510 (citations omitted); *see also, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11-12.

**\*5** "The Court recognizes that it must 'extend extra consideration' to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." *Salahuddin v. Coughlin,* 999 F.Supp. 526, 535 (S.D.N.Y.1998) (Rakoff, D.J. & Peck, M.J.) (citations & internal quotations omitted); *see, e.g., McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (a pro se party's pleadings should be read liberally and interpreted " 'to raise the strongest arguments that they suggest' ").[11] Moreover, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. *See, e. g., Irby v. New York City Transit Auth.,* 262 F.3d 412, 413-14 (2d Cir.2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that pro se litigants have actual notice, provided in an accessible manner, of the consequences of the pro se litigant's failure to comply with the requirements of Rule 56.... [E]ither the district court or the moving party is to supply the pro se litigant with notice of the requirements of Rule 56.... In the absence of such notice or a clear understanding by the pro se litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic."); *McPherson v. Coombe,* 174 F.3d at 280-81 (" 'The failure of a district court to apprise pro se litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal.' ") (citations omitted).[12] Defendants here served the appropriate notices on Hill. (Dkt. No. 27: Defs.' Rule 56.2 Notice.)

"Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz,* 93 Civ.

5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases); *see also, e.g., Viruet v. Citizen Advice Bureau,* 01 Civ. 4594, 2002 WL 1880731 at *9 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.); *Smith v. Planas,* 975 F.Supp. 303, 305 n. 2 (S.D.N.Y.1997).

## II. *HILL'S DENIAL OF RELIGIOUS FREEDOM CLAIM IS TIME BARRED*

The statute of limitations for a § 1983 action is three years. *See, e.g., Walker v. Jastremski,* 430 F.3d 560, 561 (2d Cir.2005), *cert. denied,* 127 S.Ct. 1887 (2006); *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2005); *Warren v. Altieri,* 59 Fed. Appx. 426, 427 (2d Cir.2003) (Plaintiff's " § 1983 action is governed by New York's three-year statute of limitations as set out in N.Y. C.P.L.R. § 214, the provision applicable to actions for personal injury."); *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002), *cert. denied,* 538 U .S. 922, 123 S.Ct. 1574 (2003); *Paige v. Police Dep't,* 264 F.3d 197, 199 n. 2 (2d Cir.2001); *Connolly v. McCall,* 254 F.3d 36, 40-41 (2d Cir.2001).[13]

**\*6** Hill's complaint was received by the Court's Pro Se Office on May 20, 2005, but it was signed by Hill on May 16, 2005. (Dkt. No. 1: Compl. at 1st & last pages.) In the absence of any other indication, the Court assumes that Hill gave the complaint to prison officials on May 16, 2005, and thus under the prison mailbox rule, that date is deemed the date the complaint was filed. *See, e.g., Hardy v. Conway,* No. 04-0934, 2006 WL 93083 at * 1 (2d Cir. Jan. 12, 2006) ("[I]n the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing.") (citing cases); *Walker v. Jastremski,* 430 F.3d at 562-63; *Denis v. N.Y .S. Dep't of Corr. Servs.,* 2006 WL 217926 at *11; *Rosario v. Bennett,* 01 Civ. 7142, 2002 WL 31852827 at *14 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (under the "federal 'prisoner mailbox rule,' " incarcerated pro se litigants are deemed to have filed their federal civil complaints and federal habeas petitions on the date the papers were handed to prison officials for mailing) (citing *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988)).[14]

Accordingly, because Hill's religious medallion was taken on July 28, 2001, more than three years before May 16, 2005, all defendants are granted summary judgment dismissing Hill's denial of religious freedom claim.

## III. *DEFENDANTS' SUMMARY JUDGMENT MOTION AS TO HILL'S FALSE ARREST CLAIM IS GRANTED IN PART AND DENIED IN PART*

A. *Hill's False Arrest Claim Is Not Time-Barred*
Defendants' summary judgment motion seeking dismissal of Hill's false arrest claim principally is based on statute of limitation grounds. (*See* Dkt. No. 28: Defs. Br. at 7-0; Dkt. No. 36: Defs. Reply Br. a 4-5.) The statute of limitations for a § 1983 action is three years. (*See* cases cited on page 13 above.) "Federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997); *accord, e.g., Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994), *cert. denied,* 516 U.S. 808, 116 S.Ct. 53 (1995).

In general under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington v. City of New York,* 171 F.3d 117, 121 (2d Cir.) (quotations omitted), *cert. denied,* 528 U.S. 946, 120 S.Ct. 363 (1999). [15] As the Second Circuit noted in *Covington,* however, "in the case of some actions brought under § 1983, this general rule is subject to the Supreme Court's analysis in *Heck" v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994). *Covington v. City of New York,* 171 F.3d at 121. In Heck, the Supreme Court held as follows:

We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, *when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence;* if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

**\*7** But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

\* \* \*

Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*Heck v. Humphrey,* 512 U.S. at 486-87, 489-90, 114 S.Ct. at 2372-73, 2374 (citations & fns. omitted, emphasis added); *see also, e.g., Muhammad v. Close,* 540 U.S. 749, 751, 124 S.Ct. 1303, 1304 (2004); *Jenkins v. Haubert,* 179 F.3d 19, 24-25 (2d Cir.1999); *Amaker v. Weiner,* 179 F.3d 48, 51, 52 (2d Cir.1999) ("[W]here the viability of the plaintiff's claims depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct."); *Duamutef v. Morris,* 956 F.Supp. 1112, 1115, 1117-18 (S.D.N.Y.1997).

The Second Circuit in *Covington* applied Heck to a false arrest claim:
[I]n order to determine whether [plaintiff's] false arrest claim accrued at the time of the arrest or only when the prosecution against him on the charges relating to that arrest was dismissed, the question is whether "a judgment in favor of [[plaintiff] in the § 1983 action] would necessarily imply the invalidity of" any conviction or sentence that might have resulted from the prosecution of [plaintiff] resulting from the arrest.

*Covington v. City of New York,* 171 F.3d at 122 (quoting *Heck v. Humphrey,* 512 U.S. at 487, 114 S.Ct. at 2372). [16]

The rationale for barring § 1983 false arrest claims while criminal proceedings are ongoing is to prevent inconsistency between the civil and criminal proceedings.

*See, e.g., Covington v. City of New York,* 171 F.3d at 124 ("So long as the criminal case remained pending ... a parallel § 1983 case based upon a false arrest and wrongful search claim would create the distinct possibility of an inconsistent result if the prosecutor's evidence was dependent upon a valid arrest. That is the reason why the § 1983 cause of action could not accrue during the pendency of the criminal case."); *see also, e.g., Heck v. Humphrey,* 512 U.S. at 484, 114 S.Ct. at 2371 ("This requirement [that the criminal proceeding terminate in favor of the accused] avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of ... two conflicting resolutions arising out of the same or identical transaction.") (quotations omitted).

**\*8** *Covington* instructed how *Heck* applies to the accrual of a false arrest claim for statute of limitation purposes: [T]he question in this case is when [plaintiff's] false arrest claim accrued so as to trigger the statute of limitations.

We hold that the answer to this question turns on whether a judgment in [plaintiff's] favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against him. If a favorable determination on the false arrest claim would in fact have undermined the validity of any potential conviction against [plaintiff] resulting from the state criminal proceedings, then [plaintiff's] false arrest claim would not accrue until those criminal proceedings terminated....

*Covington v. City of New York,* 171 F.3d at 119 (citations omitted).

Recovery in a § 1983 false arrest action clearly undermines the integrity of criminal proceedings when the prosecution's *"only* evidence for conviction was obtained pursuant to an arrest." *Covington v. City of New York,* 171 F.3d at 123 ("[I]n a case where the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence."); *see, e.g., Stephenson v. Rosa,* 2006 WL 464081 at \*1 ("[I]f a plaintiff's claim is grounded in an alleged Fourth Amendment violation, and the evidence obtained through the alleged violation is the *sine qua non* of the prosecution's case, then the statute of limitations begins to run on the date of dismissal of the conviction.... If, on the other hand, there is independent evidence supporting the conviction-

separate and apart from the evidence alleged to be the fruit of the poison tree-then the date of accrual is the date of arrest."); *Reid v. City of New York,* 2004 WL 626228 at \*8 ("The date on which a false arrest claim accrues is determined by considering 'whether the prosecution could have obtained a conviction without using the evidence tainted by the false arrest. If so, the claim accrues at the time of arrest. If not, the [claim] accrues when the prosecution ends.' ... In other words, if evidence obtained as a result of the arrest was necessary for a conviction, then the cause of action for false arrest does not accrue until the prosecution is terminated. If the allegedly tainted evidence was not necessary, then the cause of action accrues at the time of arrest."). [17]

Defendants interpret *Heck, Covington* and *Stephenson* to require accrual of the claim for statute of limitation purposes from the date criminal prosecution is terminated *only* where the potential conviction is based on "evidence obtained and used against [plaintiff] *as a result* of his allegedly false arrest." (Dkt. No. 36: Defs. Reply Br. at 5, emphasis in original.) "Here, [Hill] was not convicted, nor was any evidence *actually obtained as a result of a false arrest."* (*Id.*) The Court disagrees. Heck and *Covington* suggest that the existence of evidence independent of the arrest is key to the inquiry. Here, there was no evidence to prosecute Hill for possession of contraband that was independent of the evidence obtained by C.O. Melvin which led to Hill's arrest-Officer Melvin's alleged finding of a razor blade in Hill's pants. Had Hill brought a successful § 1983 false arrest action prior to the conclusion of his criminal trial, a civil verdict for Hill, finding that C.O. Melvin planted the razor blade, would necessarily be inconsistent with a criminal conviction for possession of the razor blade, since both would hinge upon whether C.O. Melvin found or planted the razor blade in Hill's pants pocket.

**\*9** When allegedly planted evidence is the basis of an arrest and criminal prosecution, a successful judgment in a § 1983 false arrest claim would necessarily undermine the criminal proceedings, and the claim thus does not accrue until the prosecution ends favorably for the § 1983 plaintiff. *E.g., Wiley v. Chicago,* 361 F.3d 994, 996 (7th Cir.) ("If, as alleged, [plaintiff] was arrested and prosecuted solely on the basis of drugs planted by the arresting officers, then any attack on the arrest would necessarily challenge the legality of a prosecution premised on the planted drugs. Therefore, any civil suit

against [the officer] for a false arrest would necessarily imply the invalidity of the potential conviction, and Heck requires that [plaintiff's] Fourth Amendment claim would not begin to accrue until the charges were dismissed.") (citations omitted), *cert. denied,* 543 U.S. 819, 125 S.Ct. 68 (2004); *see, e.g., Henry v. Purvis,* 111 Fed. Appx. 622, 623-24 (2d Cir.2004) (§ 1983 claim for false arrest "assert[ing] that the defendants lied to obtain a search warrant, planted evidence [and] destroyed exculpatory evidence" had not yet accrued under *Heck* and *Covington* where § 1983 plaintiff's criminal proceeding was pending on appeal); *Woods v. Candela,* 47 F.3d 545, 546 (2d Cir.) (Plaintiff's "present Fourth and Fifth Amendment claims, which rest on the very same grounds [as the reversal of plaintiff's conviction], necessarily imply that his conviction was unlawful, and thus could not have been raised prior to the ... reversal of his conviction."), *cert. denied,* 516 U.S. 808, 116 S.Ct. 54 (1995); *Brown v. City of Milwaukee Police Dep't,* No. 05C390, 2005 WL 1923113 at *5 (W.D.Wis. Aug. 9, 2005) ("Because evidence seized during an unconstitutional search should be suppressed at trial, the validity of petitioner's potential conviction for forgery would necessarily be at issue if he were able to prove that respondents planted the evidence supporting that charge in his hotel room while conducting an unlawful search ... Thus, petitioner's [§ 1983] claims are barred under Heck" until criminal proceedings terminate in his favor.); *Walden v. City of Chicago,* 391 F.Supp.2d 660, 673 (N.D.Ill.2005) ("[I]f a plaintiff is arrested and prosecuted solely or perhaps principally on the basis of, for example, allegedly planted drugs ... 'a[n] attack on the arrest would necessarily challenge the legality of a prosecution premised on the [illegally gained evidence].' ") (brackets in original, quoting *Wiley); Quintana v. Gates,* No. CV0007166, 2004 WL 1661540 at *3, 7 (C.D.Cal. July 20, 2004) ("When the facts supporting the [arresting] officers' probable cause determination are the same as the facts supporting the plaintiff's conviction, a finding [in a § 1983 action] that the officers lacked probable cause would 'necessarily imply the invalidity' of the plaintiff's conviction." Civil plaintiffs § 1983 claim alleging police officers unlawfully arrested plaintiff and planted drug evidence was barred under Heck because parole revocation had not been overturned and success in the § 1983 action would imply the invalidity of the parole revocation.); *Hobley v. Burge,* No. 03 C 3678, 2004 WL 1243929 at *7 (N.D. Ill. June 3, 2004) ("[S]uccess on [§ 1983 plaintiff's] false arrest claim would imply the invalidity of his conviction [because] ... every piece

of evidence to which [defendants] point [as establishing plaintiff's guilt] has been alleged to be tainted or fabricated by Defendant Officers and allegedly stems from the initial illegal arrest ... As such, [plaintiff] could not have filed his false arrest claim until his pardon" and thus claim is now timely.); *McMillen v. Nunley,* No. 3:02-CV-2367, 2003 WL 22227863 at *2 (N.D.Tex. Sept. 25, 2003) ("If plaintiff can prove that defendant made false statements to secure the search warrant ... such success would necessarily call into question his conviction, because his conviction and the falsified search warrant allegedly resulted from the same series of events," and accordingly § 1983 plaintiff cannot proceed with § 1983 false arrest claim until his conviction is overturned.), *report & rec. adopted,* 2003 WL 22469080 (N.D.Tex. Oct. 22, 2003).

**\*10** Because *Heck* and *Covington* would have precluded Hill from bringing a § 1983 false arrest claim prior to the not guilty verdict in his criminal case, his false arrest claim did not accrue for statute of limitation purposes until that date. Hill's criminal trial ended on December 19, 2003, giving him until December 19, 2006 to commence a § 1983 false arrest action. Hill's § 1983 complaint was filed in May 2005. Thus, Hill's false arrest claim is not time-barred.

## B. *Legal Standard Governing False Arrest Claims*

Defendants also moved for summary judgment against Hill's false arrest claim on qualified immunity grounds. To decide the qualified immunity issue, the Court must explore the requirements for a § 1983 false arrest claim and the factual allegations as to each defendant's alleged involvement in Hill's search and arrest. The Court turns to those issues.

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. ames,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749 (1994); *see also, e.g., Ramashwar v.. Espinoza,* 05 Civ.2021, 2006 WL 23481 at *6 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.).

"It is now far too late in our constitutional history to deny that a person has a clearly established right not to

be arrested without probable cause." *Cook v. Sheldon,* 41 F.3d 73, 78 (2d Cir.1994); *accord, e.g., Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997).

" 'A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.' " *Covington v. City of New* York, 171 F.3d 117, 122 (2d Cir.) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)), cert. *denied,* 528 U.S. 946, 120 S.Ct. 363 (1999); *see also, e.g., Boyd v. City of New York,* 336 F.3d 72, 75 (2d Cir.2003); *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003); *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002); *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992); *Chimurenga v. City of New York,* 45 F.Supp.2d 337, 341 (S.D.N.Y.1999).

"Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Jocks v. Tavernier,* 316 F.3d at 134-35 (quoting *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N .Y.S.2d 87, 93, cert. *denied,* 423 U.S. 929, 96 S.Ct. 277 (1975)); *see, e.g., Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004); *Covington v. City of New York,* 171 F.3d at 122 ("Under New York law, 'a plaintiff claiming false arrest must show, *inter alia,* that the defendant intentionally confined him without his consent and without justification.' ") (quoting *Weyant v. Okst,* 101 F.3d at 852); *Marshall v. Sullivan,* 105 F.3d 47, 50 (2d Cir.1996); *Singer v. Fulton County Sheriff,* 63 F .3d 110, 118 (2d Cir.1995), cert. *denied,* 517 U.S. 1189, 116 S.Ct. 1676 (1996).

**\*11** "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006). [18] "[A] grand jury's decision of whether probable cause exists to indict is distinct from the probable cause determination of whether an arrest is privileged." *Jocks v. Tavernier,* 316 F.3d at 135. "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Escalera v. Lunn,* 361 F.3d at 743 (quoting *Weyant v..*

*Okst,* 101 F.3d at 852). [19] "Defenses which negate the existence of a crime should similarly negate probable cause [for an arrest]." *Jocks v. Tavernier,* 316 F.3d at 135.

When planted evidence is the basis for an arrest, officers accused of planting the evidence cannot assert probable cause as a reason to dismiss a claim for false arrest. *Chimurenga v. City of New York,* 45 F.Supp.2d at 342 ("As to the false arrest claims, the defendants argue that the claims must be dismissed because the discovery of a razor blade in plaintiff's belongings created probable cause for her arrest. This might exonerate other officers involved in the arrest, but it is irrelevant to defendants ... who are accused of 'planting' the blade.") [20] (citing *Dunn v. City of Syracuse,* 83 A.D.2d 783, 443 N.Y.S.2d 463, 464 (4th Dep't 1981) ("One who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest.")); *see also Neal v. City of Harvey, Ill.,* 1 F.Supp.2d 849, 856, 857 (N.D.Ill.1998) (Summary judgment of § 1983 plaintiff's false arrest claim denied where there was "a genuine issue of fact as to whether the [controlled] substance was planted on [plaintiff]" and "a genuine issue of fact exist[ed] as to the probable cause to arrest [plaintiff].").

### C. *Summary Judgment On The False Arrest Claim Is Denied Officer Melvin and Captain Eck*

Summary judgment on Hill's false arrest claim against Correction Officer Melvin and Captain Eck is denied because there is a triable issue of fact as to whether Correction Officer Melvin planted the razor, as Hill alleges. *See, e.g., Chimurenga v. City of New York,* 45 F.Supp.2d 337, 342 (S.D.N.Y.1999) ( "While the proof of this allegation [that defendants planted a razor blade in plaintiff's property] is entirely circumstantial, it is not insufficient to create a jury issue as to whether [defendants] worked in concert to plant the blade and thereby falsely engineered plaintiff's arrest."). [21] While there is less evidence as to whether Captain Eck was involved in Officer Melvin's discovery or planting of the razor, because he signed the Infraction Report and the Infraction Notice as the "Investigating Officer" and "Supervisor" (Ex. G: Infraction Rep.; Ex. H: Infraction Notice), and because he did not move for summary judgment on the merits of the false arrest claim against him, Captain Eck is denied summary judgment on Hill's false arrest claim.

**\*12** The factual dispute concerning C.O. Melvin's discovery or planting of the razor blade (and Captain Eck's knowledge of same) also precludes summary judgment for Correction Officer Melvin and Captain Eck on qualified immunity grounds. *E.g., McClellan v. Smith,* 439 F.3d 137, 148-49 (2d Cir.2006) (reversing summary judgment because of factual disputes as to qualified immunity); *Curry v. Syracuse,* 316 F.3d 324, 334-35, 337 (2d Cir.2003) (same); *Marshall v. Sullivan,* 105 F.3d 47, 54 (2d Cir.1996); *Weyant v. Okst,* 101 F.3d 845, 857-58 (2d Cir.1996) (denying summary judgment for defendants on qualified immunity grounds where facts relevant to the reasonableness of officers' actions during an arrest were in dispute); *Oliveira v. Mayer,* 23 F.3d 642, 648-50 (2d Cir.1994) (district court's grant of summary judgment for plaintiffs on qualified immunity in a false arrest claim was inappropriate where facts relevant to the reasonableness of officers' actions were in dispute), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721 (1995); *Weaver v. Brenner,* 40 F.3d 527, 533, 537 (2d Cir.1994) ("Since defendants hotly dispute plaintiff's allegations, a factual determination of their conduct is needed to resolve the issue of qualified immunity."); *Warlick v. Cross,* 969 F.2d 303, 305-06 (7th Cir.1992) ("Whether Officer Cross planted the evidence was a disputed issue of fact. Obviously the question whether he was immune was very different if the evidence had been planted from the situation if the evidence had not been planted ..."); *Golino v. City of New Haven,* 950 F.2d 864, 870-72 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032 (1992). [22]

D. *Summary Judgment On Hill's False Arrest Claim Is Granted To Correction Officers Amir and Wilson*

Hill has not presented any evidence or even alleged that defendants Correction Officers Amir and Wilson were involved directly in the alleged planting of a razor in Hill's pants. While Hill claims they conspired with C.O. Melvin (*e.g.,* Dkt. No. 35: Hill Rule 56.1 Stmt. ¶ 2), Hill has failed to provide *evidence* that Correction Officers Amir and Wilson conspired with Correction Officer Melvin to plant the razor. "Conclusory" allegations of conspiracy are insufficient to survive summary judgment on a claim of conspiracy under § 1983. [23] *See, e.g., Tapp v. Champagne,* 164 Fed. Appx. 106, 108 (2d Cir.2006); *Wade v. Pataki,* 75 Fed. Appx. 45, 46 (2d Cir.2003) ("The district court's conclusion that the defendants were entitled to summary judgment on the conspiracy claim was also proper, as appellant presented no evidence, beyond bald assertions

and conclusory allegations, to establish a conspiracy among the defendants to deprive him of due process rights ."); *Silverman v. City of New York,* 64 Fed. Appx. 799, 801 (2d Cir.2003) ("The § 1983 conspiracy claim fails because [plaintiff]'s allegations are unspecific, conclusory and unsupported."); *Ciambriello v. County of Nassau,* 292 F.3d at 325; *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 248, 256-57 (2d Cir.1984) ("[P]laintiff s failure to allege any material facts to support his conclusory allegation of conspiracy warrants summary dismissal of his complaint under either Fed.R.Civ.P. 12(b)(6) or Fed .R.Civ.P. 56."), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408 (1985); *Bussey v. Phillips,* 419 F.Supp.2d 569, 586-87 (S.D.N.Y .2006) (summary judgment); *Jones v. Nat'l Commc'n & Surveillance Networks,* 409 F.Supp.2d 456, 471 (S.D.N.Y.2006); *McLaurin v. New Rochelle Police Officers,* 363 F.Supp.2d 574, 577 (S.D.N.Y.2005) ("Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed."); *Lewittes v. Lobis,* 04 Civ. 0155, 2004 WL 1854082 at \*12 n. 13 (S.D.N.Y. Aug. 19, 2004) (Peck, M.J.) ( & cases cited therein), *aff'd,* 164 Fed. Appx. 97 (2d Cir.2006). Thus, summary judgment is granted to Correction Officers Amir and Wilson on Hill's false arrest claim.

IV. *ALL DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON HILL'S § 1983 MALICIOUS PROSECUTION CLAIM*

A. *Legal Standard Governing Malicious Prosecution Claims* [24]

**\*13** "The Second Circuit has held that '[f]reedom from malicious prosecution is a constitutional right that has long been clearly established.' " *Winn v. McQuillan,* 390 F.Supp.2d 385, 389-90 (S.D.N.Y.2005) (quoting *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003)). "Claims for ... malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for ... malicious prosecution under [New York] state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003); *see also, e.g., Winn v. McQuillan,* 390 F.Supp.2d at 390; *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir.2003). To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) "the defendant initiated a criminal proceeding"; (2) the proceeding terminated in plaintiff's favor; (3) "there

was no probable cause for the criminal charge"; and (4) the defendant acted maliciously. *Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir.2004). For a malicious prosecution claim to rise to a constitutional level under § 1983, there must also be a post-arraignment seizure. *Jocks v. Tavernier,* 316 F.3d at 136; *see also, e.g., Singer v. Fulton County Sheriff,* 63 F.3d 110, 116-17 (2d Cir.1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676 (1996). New York law " 'places a heavy burden on malicious prosecution plaintiffs....' " *Rothstein v. Carriere,* 373 F.3d at 282.

**B.** *Hill's Malicious Prosecution Claim Fails Because Of The Grand Jury Determination Of Probable Cause*
Here, element two is satisfied because Hill prevailed at his criminal trial. (*See* page 7 above.) Defendants argue that no issue of material fact exists as to elements one, three and four of Hill's malicious prosecution claim: whether defendants initiated Hill's prosecution, whether there was probable cause to prosecute Hill, and whether defendants acted with malice. *(See* Dkt. No. 28: Defs. Br. at 2, 9-14; Dkt. No. 36: Defs. Reply Br. at 1-2, 6-8.) Because the Court agrees that defendants are entitled to summary judgment on the basis of the third prong, existence of probable cause, the Court need not examine the other elements of a malicious prosecution claim.

An indictment by a grand jury " 'creates a presumption of probable cause' " to prosecute that defendant. [25] *Rothstein v. Carriere,* 373 F.3d 275, 282-83 (2d Cir.2004). [26] " 'The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.' " *Rothstein v.. Carriere,* 373 F.3d at 283 (quoting *Colon v. City of New York,* 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56). [27]

Thus, in order for a plaintiff to prove a malicious prosecution claim after having been indicted, " 'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.' " *Rothstein v. Carriere,* 373 F.3d at 283 (quoting *Colon v. City of New York,* 60 N.Y.2d at 83, 468 N.Y.S.2d at 456); *accord, e.g., Savino v. City of New York,* 331 F.3d at 72; *Ramashwar v. Espinoza,* 2006 WL 23481 at *7. Alternatively, the

presumption " 'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.' " *Williams v. City of New York,* 02 Civ. 3693, 2003 WL 22434151 at *6 (S.D.N.Y. Oct. 23, 2003) (Motley, D.J.), aff'd, 120 Fed. Appx. 388 (2d Cir.2005); *accord, e.g., Ramashwar v. Espinoza,* 2006 WL 23481 at *7.

**\*14** Here, Hill was indicted by a grand jury (*see* page 5 above), and thus must rebut the presumption that there was probable cause to prosecute him. Hill seems to contend that his possession of contraband infraction did not provide probable cause for his arrest because Correction Officer Melvin planted the razor in Hill's pants pocket. [28] Additionally, Hill argues that defendants perjured themselves before the grand jury. (Hill Rule 56.1 Stmt. ¶ 8.) However, Hill does not present the Court with the defendants' grand jury testimony, for all this Court knows, some of the defendants may not have testified before the grand jury and others may have testified before the grand jury, as at trial, that they did not recall the incident. (*See* pages 6-7 above.) Furthermore, Hill has not presented any admissible evidence beyond his own testimony that Correction Officer Melvin planted the razor. (*See* page 4 & n. 6 above.) Hill must present more than " 'mere conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith' " to rebut the presumption of probable cause. *Reid v. City of New York,* 2004 WL 626228 at *7 (quoting *Savino v. City of New York,* 331 F.3d at 72); *see also, e.g., Simmons v. New York City Police Dep't,* 97 Fed. Appx. 341, 343 (2d Cir.2004) ("Although [plaintiff] testified that the arresting officer ... told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."); *Ramashwar v. Espinoza,* 2006 WL 23481 at *8; *Scully v. City of Watertown,* No. 7:03 CV 846, 2005 WL 1244838 at *11 (N.D.N.Y. May 25, 2005) ("The simple assertion that [plaintiff] was acquitted and therefore the officers must have lied is insufficient to overcome the presumption created by the grand jury's indictment ..."); *Montes v. King,* 00 Civ. 4707, 2002 WL 1808209 at *3 n. 5 (S.D.N.Y. Aug. 6, 2002) ("[U]nsubstantiated speculation" that officer acted in bad faith is not enough to survive summary judgment.); *Jenkins v. City of New York,* 98 Civ. 7170, 98 Civ. 7338, 1999 WL 782509 at

*9, 11 (S.D.N.Y. Sept. 30, 1999) (despite later-discovered perjury by a civilian witness at the grand jury, plaintiff "failed to produce any evidence of intentional police misconduct and his allegations are contradicted by the affidavits and contemporaneous documentary record in support of the motion. [Plaintiff] has thus failed to rebut the presumption that probable cause to commence the proceeding existed."), *aff'd,* 216 F.3d 1072 (2d Cir.2000).

Hill's argument proves merely that there were two versions of the strip search incident-(1) Hill's and (2) the prosecution's witnesses' including the correction officers'. Conflicting testimony between the (civil) plaintiff and defendants is not sufficient to rebut the presumption of probable cause. *See, e.g., Brogdon v. City of New Rochelle,* 200 F.Supp.2d 411, 422 (S.D.N.Y.2002) ("The record is barren of evidence (as opposed to conclusory allegations) to overcome the presumption created by the indictment. [Plaintiff] asserts that [the defendant officer] perjured himself, but that conclusory allegation is insufficient to overcome this strong presumption.... [Moreover,] ' [t]he existence of a "swearing contest" between plaintiff as to his innocence and an eyewitness as to the events "cannot of itself render the issue of probable cause a jury question." ' "); *DiMascio v. City of Albany,* No. 93-CV-0452, 1999 WL 244648 at *3 (N.D.N.Y. Apr. 21, 1999) (contradictions between plaintiff's and defendant's trial testimony "is insufficient to give rise to an inference of fraud, perjury or the withholding of evidence and is probative of little more than a disagreement over the turn of events" on the date of plaintiff's arrest.), aff'd, 205 F.3d 1322 (2d Cir.2000).

**\*15** Even if Hill provided the Court with the criminal trial testimony of inmate witness Gillard, and even if Gillard's testimony substantiated Hill's allegation, such testimony would not rebut the presumption of probable cause. [29] "Conflicting testimony between witnesses at the criminal trial is not enough to rebut the presumption of probable cause." *Ramashwar v. Espinoza,* 2006 WL 23481 at *8; *see, e.g., DiMascio v. City of Albany,* 1999 WL 244648 at *3 ("A mere conflict between witness' trial testimony alone is insufficient to suggest fraud, perjury or the withholding of evidence."); *Hathaway v. County of Essex,* 995 F.Supp. 62, 69 (N.D.N.Y.1998) ("Reliance on variations in testimony ... as evidence of fraud, suppression of evidence, or perjury [is] insufficient to overcome the presumption of probable cause."), *aff'd,* 172 F.3d 37 (2d Cir.), *cert. denied,* 528 U.S. 894, 120 S.Ct. 222 (1999); *see also, e.g., Colon v. City of New York,* 60

N.Y.2d at 83, 468 N.Y.S.2d at 456 (Police's "failure to pursue the investigation is not the equivalent of fraud or the suppression of evidence. Nor do variations in the witnesses' testimony prove perjury. Rather, they appear to indicate only the witnesses' differing perceptions of the incidents they observed.").

The fact that Hill's version of the incident contradicts that of the officers is not enough to present an issue of fact as to the probable cause element of Hill's malicious prosecution claim. [30] (*See* cases cited above.) If it were, any time there were conflicting versions of an incident and the criminal trial resulted in a not guilty verdict, the arresting officers could be sued for malicious prosecution, despite a grand jury finding of probable cause. That is not the state of the law, nor should it be. *See Ramashwar v. Espinoza,* 2006 WL 23481 at *9. Similarly, if probable cause could be met by an unsupported allegation that an arrest was based on planted evidence, then any person found in possession of contraband could sue the searching officers for malicious prosecution merely by claiming the officers planted the contraband. After a grand jury indictment, the case law for malicious prosecution sets a higher standard, which cannot be met by speculation or self-serving statements.

Moreover, even if the allegation that an officer planted evidence and then lied about it to the grand jury could in some cases rebut the presumption of probable cause, in this case Hill's malicious prosecution claim fails because he has not supplied the Court with *any* grand jury testimony. The Court thus has no idea which defendants, if any, testified, nor what their grand jury testimony was. *See e.g., Rothstein v. Carriere,* 373 F.3d at 284 ("The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]' Here, the content of [defendant's] grand jury testimony is unknown, as is the content of the rest of the government's presentation."); *Scully v. City of Watertown,* 2005 WL 1244838 at *11 (Plaintiff failed to overcome presumption of probable cause because "[p]laintiff merely assert[ed], in wholly conclusory fashion, that [defendants] must have lied before the grand jury because he was eventually acquitted. However, Plaintiff neither provides defendants' grand jury testimony, nor points to any specific trial testimony that is purportedly false.") (citation omitted). That certain of the defendants could not recall the incident at trial two

years later is not, as Hill asserts, evidence of malicious prosecution. It is not surprising that correction officers might not recall a minor incident like this two years later. Indeed, if as Hill asserts the correction officers were out to get him, one would expect them to have testified against Hill at his criminal trial rather than testifying to a lack of recollection.

CONCLUSION

**\*16** For the reasons discussed above, defendants' summary judgment motion is granted in part and denied in part. Specifically:

1. All defendants are entitled to summary judgment dismissing Hill's denial of religious freedom claim as time barred.

2. All defendants are entitled to summary judgment dismissing Hill's malicious prosecution claim because Hill has failed to allege facts to rebut the presumption of probable cause.

2. Defendants C.O. Amir and C.O. Wilson are entitled to summary judgment dismissing Hill's false arrest claim against them because there is no evidence that they were involved in C.O. Melvin's alleged planting of the razor blade that led to Hill's arrest.

Defendants C.O. Melvin and Captain Eck are denied summary judgment on Hill's false arrest claim against them because the claim is not time barred, there are material issues of disputed fact as to whether C.O. Melvin planted the razor blade (and whether Captain Eck knew that), and they are not entitled to qualified immunity because of the same disputed facts.

SCHEDULING ORDER

The parties are to file the Proposed Joint Pretrial Order by August 11, 2006. Defense counsel is to put the Proposed Joint Pretrial Order together; plaintiff Hill is to provide his material for the Pretrial Order to defense counsel by July 28, 2006. If plaintiff does not do so, defendants are to separately file their portions of the Pretrial Order.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1749520

Footnotes

1   It appears that, although Hill claims he gave the appropriate documents to the U.S. Marshal, defendants Amir and Melvin were not served. *(See* Dkt. No. 28: Defs. Br. at 1 n. 1; Dkt. No. 27: Defs. Rule 56.1 Stmt. at 1 n. 1.) The Court directs the Pro Se Office to provide an Amended Summons and apropriate paperwork directly to the Marshal's Office to now perfect service on C.O. Melvin.

2   Defendants' Brief states that Correction Officer Amir was assigned to Intake Area "A," Correction Officer Andre Melvin was assigned to Intake Area "B," and Correction Officer Dawn Wilson "was the property officer for intake" at V.C.B.C. (Dkt. No. 28: Defs. Br. at 4.) Defendants' evidentiary citations for this, however, do not support the statement as to C.O. Amir or C.O. Wilson.

3   Unless otherwise noted, references to "Ex." are to the exhibits to the Sitaras Affidavit (Dkt. No. 27).

4   Hill has since returned to Riker's Island and recovered all his property, including the religious medallion. (Hill Dep. at 76.)

5   According to Hill, he was subjected to five police searches prior to his arrival at the V.C.B.C., which made it impossible for him to possess a razor in the intake area. (Hill Rule 56.1 Stmt. ¶ 10.) Hill surmises that "defendants retaliated with malice against plaintiff for him requesting a grievance or threatening to file a lawsuit." (*Id.* ¶ 14.) Hill claims that "all defendants worked in collusion to fabricate, manufacture, and plant the razor on the plaintiff." (*Id.* ¶ 9.)

6   Inmate Gillard confirmed this in his testimony at Hill's prison disciplinary hearing. (*See* Ex. M: Hearing Rep.) Gillard testified at Hill's criminal trial as a witness for the defense, but the Court has not been provided with any relevant excerpts of his trial testimony. (Defs. Rule 56.1 Stmt. ¶ 18; Ex. R: Gillard: Tr. 213-14.) There is no non-hearsay evidence in the record as to what inmate Felder saw.

7   According to Hill, the Red I.D. classification required him "to wear 'red mittens hand cuffed with a waist chain behind his back' " when he was in transit to court and while in court. (Compl. "Claim Three.")

8 The Court's knowledge of defendants' testimony at Hill's criminal trial is limited to the excerpts submitted by defendants in Exhibit R. Hill has not submitted any trial transcript excerpts as support for his claims, despite having been instructed to do so and given time to do so by the Court. Excerpts of Officer Melvin and Captain Eck's testimony, as provided by defendants, do not include any statements concerning recollection of the events surrounding the July 28, 2001 incident.

9 Hill's complaint consists of seven “claims.” (Compl.) Some of Hill's “claims” contain multiple legal causes of action while others consist solely of factual allegations that the Court does not construe as additional causes of action.

“Claim One” alleges that defendants (1) violated Hill's religious freedom, (2) caused Hill to be falsely arrested, (3) committed perjury at Hill's criminal trial and at the institutional hearing, and (4) conspired to commit perjury in order to get Hill convicted.

“Claim Two (A)” contains factual allegations about the events of July 28, 2001, including the fact that Hill's religious medallion was taken. “Claim Two (B)” describes the strip search and alleges that Officer Melvin planted the razor in Hill's pants.

“Claim Three” alleges that, as a result of the wrongful Red ID status, Hill sustained “severe pains to his shoulders repeated cuts & swelling of his wrists, stiffening of the joints, and pain when ever plaintiff had to sit down or lie down.” The injuries allegedly occurred while Hill was being driven in a bus, without a seatbelt, and with his hands cuffed behind his back, and was knocked around from “pot holes or sharp turns.”

“Claim Four” describes Hill's suicide attempts. “Claim Five” and “Claim Six” describe Hill's difficulty in making bail while locked up for the contraband charge. “Claim Seven” repeats the claim that defendants committed perjury.

Defendants identify six claims in Hill's complaint: “false arrest, malicious prosecution, conspiracy, an unconstitutional prisoner classification, perjury, and confiscation of [plaintiff's] religious effects.” (Dkt. No. 28: Defs. Br. at 3.)

10 For additional decisions by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Report and Recommendation, *see, e.g., Denis v. N.Y.S. Dep't of Corr. Servs.,* 05 Civ. 4495, 2006 WL 217926 at *9-11 (S.D.N.Y. Jan. 30, 2006) (Peck, M.J.), *report & rec. adopted,* 2006 WL 406313 (S.D.N .Y. Feb. 22, 2006) (Kaplan, D.J.); *Ramashwar v. Espinoza,* 05 Civ.2021, 2006 WL 23481 at *5-6 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.); *Doe v. Goord,* 04 Civ. 0570, 2005 WL 3116413 at *8-10 (S.D.N.Y. Nov. 22, 2005) (Peck, M.J.); *Dawkins v. Jones,* No. 03 Civ. 0068, 2005 WL 196537 at *9-10 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.); *Hall v. Perilli,* 03 Civ. 4635, 2004 WL 1068045 at *3 (S.D.N.Y. May 13, 2004) (Peck, M.J.); *Baker v. Welch,* 03 Civ. 2267, 2003 WL 22901051 at *4-6 (S.D.N.Y. Dec. 10, 2003) (Peck, M.J.); *Muhammad v. Pico,* 02 Civ. 1052, 2003 WL 21792158 at *10-11 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.) (citing prior decisions).

11 *See also, e.g., Commer v. American Fed'n of State, County & Mun. Employees,* 272 F.Supp.2d 332, 335 (S.D.N.Y.2003) (“[T]he Court is mindful that the plaintiff is proceeding pro se and that his submissions should be held to ‘less stringent standards than formal pleadings drafted by lawyers ....‘ ”), *aff'd,* 390 F.3d 203 (2d Cir.2004); *Douglas v. Portuondo,* 232 F.Supp.2d 106, 113 (S.D.N.Y.2002).

12 *See also, e.g., Trammell v. Coombe,* No. 97-2622, 201 F.3d 432 (table), 1999 WL 1295856 at *2 (2d Cir. Dec. 23, 1999); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999); *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996); *see generally* S.D.N.Y. Local Civil Rule 56.2 (requiring service of notice explaining the requirements of Rule 56 on litigant proceeding pro se).

13 *See also, e.g., Denis v. N.Y. S. Dep't of Corr. Servs.,* 05 Civ. 4495, 2006 WL 217926 at *11 (S.D.N.Y. Jan 30, 2006) (Peck, M.J.), *report & rec. adopted,* 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006) (Kaplan, D.J.); *Diallo v. Williams,* 04 Civ. 4556, 2006 WL 156158 at *2 (S.D.N.Y. Jan. 20, 2006); *Allan v. City of New York,* 386 F.Supp.2d 542, 548 (S.D.N.Y.2005); *Mitchell v. Home,* 377 F.Supp.2d 361, 371 (S.D.N.Y.2005); *Dawkins v. Jones,* 03 Civ. 0068, 2005 WL 196537 at *8 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.); *Muhammad v. Pico,* 02 Civ. 1052, 2003 WL 21792158 at *18 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.); *Bristow v. Smith,* 03 Civ. 2663, 2003 WL 21437005 at *1 (S.D.N.Y. June 18, 2003) (Peck, M.J.); cf. *Noguera v. Hasty,* 99 Civ. 8786, 2000 WL 1011563 at *12 (S.D.N.Y. July 21, 2000) (Peck, M.J.) *report & rec. adopted in part,* 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001) (Wood, D.J.).

14 *See also, e.g., United States v. Montoya,* 335 F.3d 73, 75-76 (2d Cir.2003); *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.), *cert. denied,* 534 U.S. 886, 122 S.Ct. 197 (2001); *Hill v. Senkowski,* 409 F.Supp.2d 222, 229 (W.D.N.Y.2006); *Bordas v. Greiner,* 04 Civ. 8904, 2005 WL 3071461 at *2 (S.D.N.Y. Nov. 14, 2005); *Shomo v. City of New York,* 03 Civ. 10213, 2005 WL 756834 at *3 (S.D.N.Y. Apr. 4, 2005); *Dawkins v. Jones,* 2005 WL 196537 at *8; *Coble v. Stinson,* No. 97-CV-0717, 2004 WL 1454392 at *1 n. 4 (W.D.N.Y. Jun. 23, 2004); *Moreno-Castillo v. United States,* 02 Civ. 2858, 2003 WL 23109747 at *1 n. 1 (S.D.N.Y. Dec. 31, 2003).

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

15  *See also, e.g., Washington v. County of Rockland,* 373 F.3d 310, 317 (2d Cir.2004); *Ormiston v. Nelson,* 117 F.3d at 71; *Eagleston v. Guido,* 41 F.3d at 871; *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368 (1981).

16  *Accord, e.g., Morris v. New York City Police Dep't,* 59 Fed. Appx. 421, 422 (2d Cir.2003) ("[I]f plaintiff can show that a conviction obtained against him would have depended upon a false arrest, a Section 1983 claim arising from the false arrest does not accrue until such a conviction is no longer a possibility."); *see also, e.g., Black v. Coughlin,* 76 F.3d 72, 75 (2d Cir.1996); *Woods v. Candela,* 47 F.3d 545, 546 (2d Cir.), *cert. denied,* 516 U.S. 808, 116 S.Ct. 54 (1995); *Stephenson v. Rosa,* 03 Civ. 8503, 2006 WL 464081 at *1 (S.D.N.Y. Feb. 24, 2006); *Reid v. City of New York,* 00 Civ. 5164, 2004 WL 626228 at *8-9 (S.D.N.Y. Mar. 29, 2004), *report & rec. adopted,* 2004 WL 1488194 (S.D.N.Y. July 1, 2004); *Lucas v. Novogratz,* 01 Civ. 5445, 2002 WL 31844913 at *3 (S.D.N.Y. Dec. 18, 2002); *McAllister v. New York City Police Dep't,* 49 F.Supp.2d 688, 700-03 (S.D.N.Y.1999) (Wood, D.J. & Peck, M.J.) ( & cases cited therein).

17  *See also, e.g., Lucas v. Novogratz,* 2002 WL 31844913 at *3 ("[T]he Second Circuit has made clear that *Heck* does not preclude a claim for false arrest under § 1983 unless the sole basis for the conviction was evidence seized as a result of the illegal arrest."); *compare, e.g., Warren v. Altieri,* 59 Fed. Appx. 426, 427 (2d Cir.2003) ("Plaintiff's allegations of assault [by police] are unrelated to the criminal charges underlying the warrant that prompted his arrest. Accordingly, *Covington* is inapplicable" and the statute of limitations began to run as of the time of the assault.).

18  *Accord, e.g., Escalera v. Lunn,* 361 F.3d at 743; *Caldarola v. Calabrese,* 298 F.3d at 161; *Kent v. Katz,* 312 F .3d 568, 573 (2d Cir.2002); *Covington v. City of New York,* 171 F.3d at 121; *Marshall v. Sullivan,* 105 F.3d at 50; *Weyant v. Okst,* 101 F.3d at 852; *Singer v. Fulton County Sheriff,* 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); *Bernard v. United States,* 25 F.3d 98, 102, 104 (2d Cir.1994) ("the existence of [probable cause] is a complete defense to an action for false arrest"); *Fox v. City of New York,* 03 Civ. 2268, 2004 WL 856299 at *4-5 (S.D.N.Y. Apr. 20, 2004); *Greenfield v. City of New York,* 99 Civ. 2330, 2000 WL 124992 at *5 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); *Shaw v. City of New York,* 95 Civ. 9325, 1997 WL 187352 at *3 (S.D.N.Y. April 15, 1997) (Peck, M.J.); *Miloslavski v.. AES Eng'g Soc'y, Inc.,* 808 F.Supp. 351, 354 (S.D.N.Y.1992) ("under New York law, 'probable cause serves as a complete defense to the charges of false arrest and malicious prosecution' "), aff'd, 993 F.2d 1534 (2d Cir.), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68 (1993).

19  *Accord, e.g., Jaegly v. Couch,* 439 F.3d at 152; *Boyd v. City of New York,* 336 F.3d at 75-76; *Caldarola v. Calabrese,* 298 F.3d at 162; *Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir.2001); *Marshall v. Sullivan,* 105 F.3d at 54.

20  *Chimurenga* held that, "drawing all reasonable inferences in favor of the plaintiff, there are triable issues of fact as to whether the razor blade was 'planted' in the box by the individual or concerted actions of [defendants]." *Chimurenga v. City of New York,* 45 F.Supp.2d at 342 (citation & fn. omitted).

21  In *Chimurenga,* the only evidence provided by the plaintiff of the alleged planting of the razor was as follows: "Among other things, plaintiff has testified not only that she never placed any razor blade in the box of books but also that there was no opportunity for anyone else besides [defendant] to do so, since she inspected the books for approximately forty minutes on the day before she brought them to the Detention Center, personally placed the books in the box shortly before she left her apartment for the facility on October 22, 1997, and kept the box in her sole and exclusive possession until it was surrendered for scanning. Furthermore, plaintiff testified that the blade was in plain view in the box when it was 'discovered' by [defendant], a location consistent with her theory that the blade was hastily planted." *Chimurenga v. City of New York,* 45 F.Supp.2d at 342 (citations omitted). Here, similarly, Hill asserts that the razor was planted and offers as further proof the fact that he underwent five searches by the police before being taken to Rikers. (*See* page 4 n. 5 above.)

22  *See, e.g., Lee v. McCue,* 410 F.Supp.2d 221, 225-26 (S.D.N.Y.2006) ("This is a classic example of a case in which qualified immunity cannot be given to the officer defendants because there are too many disputes about what actually happened."); *Jeanty v. County of Orange,* 379 F.Supp.2d 533, 542 (S.D.N.Y.2005) (denying summary judgment on qualified immunity because of genuine issues of material fact); *Atkins v. County of Orange,* 372 F.Supp.2d 377, 402 (S.D.N.Y.2005) (same); *Mack v. Town of Wallkill,* 253 F.Supp.2d 552, 559-60 (S.D.N.Y.2003) (same); *Greenfield v. City of New York,* 99 Civ. 2330, 2000 WL 124992 at *3 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); *Sorensen v. City of New York,* 98 Civ. 3356, 1999 WL 511923 at *3 (S.D.N.Y. July 20, 1999) ("Where, as here, there are material factual issues to be resolved, the issue of qualified immunity must await trial."); *Yanez v. City of New York,* 29 F.Supp.2d 100, 109-10 (E.D.N.Y.1998) ("pre-trial resolution of the qualified immunity defense may be defeated by a factual dispute").
The Court also believes that qualified immunity is an inappropriate defense in this case because the defense is unavailable where the allegedly violated right is "clearly established." *See, e.g., Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir.2002); *Martinez v. Simonetti,* 202 F.3d 625, 633-34 (2d Cir.2000); *Young v. County of Fulton,* 160 F.3d 899, 903 (2d. Cir.1998); *Muhammad v. Pico,* 02 Civ. 1052, 2003 WL 21792158 at *15 n. 38 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.);

*Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070 at *11 (S.D.N.Y. May 7, 2001) (Peck, M.J.); *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *7 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.). The right to be free from false arrest was clearly established long before Hill's arrest, as was the right to not be falsely imprisoned based on planted evidence. *See, e.g., Zabrey v. Coffey,* 221 F.3d 342, 348-49, 355-57 (2d Cir.2000) ("[The] constitutional right ... not to be deprived of liberty on the basis of false evidence fabricated by a government officer ... was clearly established in 1996, when [defendant's] alleged act occurred ..."); *Henry v. City of New York,* 02 Civ. 4824, 2003 WL 22077469 at *4 (S.D.N.Y. Sept. 8, 2003) (following *Zabrey,* finds "constitutional violation if one is deprived of his liberty because of the fabrication" of evidence.).

23    "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culberson,* 200 F.3d 65, 72 (2d Cir.1999); *see, e.g., Robbins v. Cloutier,* 121 Fed. Appx. 423, 425 (2d Cir.2005); *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002); *Jones v. Nat'l Commc'n & Surveillance Networks,* 409 F.Supp.2d at 471-72; *Jessamy v. New Rochelle,* 292 F.Supp.2d 498, 513 (S.D.N.Y.2003); *Bullard v. City of New York,* 240 F.Supp.2d 292, 301 (S.D.N.Y.2003). The Second Circuit has "recognized that such 'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn v. Culberson,* 200 F.3d at 72. Here, Hill has not provided the Court with direct or circumstantial evidence of conspiracy.

24    For additional decisions by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Opinion, *see, Ramashwar v. Espinoza,* 05 Civ.2021, 2006 WL 23481 at *7 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.).

25    This presumption of probable cause from the grand jury's indictment applies to malicious prosecution claims but not to false arrest claims. *McClellan v. Smith,* 439 F.3d 137, 145 (2d Cir.2006) ("[W]e look to New York law to determine whether a presumption of probable cause arising from a grand jury indictment can be a defense to these claims ... '[T]he New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment "applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions." ' ") (internal citation omitted; quoting *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir.2003)) (quoting *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 92-93, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277 (1975)); *accord, e.g., Reid v. City of New York,* 00 Civ. 5164, 2004 WL 626228 at *7 n. 4 (S.D.N.Y. Mar. 29, 2004), *report & rec. adopted,* 2004 WL 1488194 (S.D.N.Y. July 1, 2004).

26    *Accord, e.g., Boyd v. City of New York,* 336 F.3d 72, 77 (2d Cir.2003); *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir.2003); *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983); *Ramashwar v. Espinoza,* 05 Civ.2021, 2006 WL 23481 at *7 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.).

27    *See also, e.g., Boyd v. City of New York,* 336 F.3d at 77; *Savino v. City of New York,* 331 F.3d at 72; *Ramashwar v. Espinoza,* 2006 WL 23481 at *7.

28    Hill asserts that the probable cause for his arrest on the possession of contraband charge was based on lies defendants made to the arresting officers. (Dkt. No. 35: Hill Rule 56.1 Stmt. ¶ 8.) The Court presumes that Hill is alleging that there was no probable cause to arrest him because the arrest was based on fraudulent evidence. *(See* Compl. ¶ "Claim Five": "Plaintiff on July 29, 2001 was charged criminally with a D. Felony of promoting prison contraband, as a result of being framed by the defendants.")

29    Gillard testified at Hill's infraction hearing that the razor did not appear on the x-ray machine monitor as Hill's pants passed through the machine. *(See* page 4 n. 6 above.) Conversely, C.O. Melvin reported that he initially saw the razor blade on the x-ray machine as Hill's pants passed through. *(See* pages 4-5 above.) That Gillard did not see the razor on the x-ray monitor is not necessarily inconsistent with C.O. Melvin, who is trained in using the equipment, seeing the razor. *(See* Ex. N: Hearing Disposition Notice, where hearing officer credited Gillard's testimony as consistent with the "staff" testimony that Hill possessed a weapon .)

30    This finding is not inconsistent with the Court's finding that there is a factual dispute as to Hill's false arrest claim. Although the existence of probable cause for Hill's arrest is disputed in both the malicious prosecution and false arrest claims, Hill's affidavit is not sufficient to rebut the presumption in a malicious prosecution claim. *(See* cases cited above.) Although the court in *Chimurenga v. City of New York,* 45 F.Supp.2d 337, 343 (S.D.N.Y.1999), denied summary judgment on both the false arrest and malicious prosecution claims, the criminal prosecution was dismissed by the district attorney, apparently before grand jury indictment. Thus the plaintiff in *Chimurenga,* unlike Hill, did not have to rebut a presumption of probable cause in order to survive summary judgment on a malicious prosecution claim.

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 624081
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason R. WHITE, Plaintiff,

v.

Brian FISCHER, Commissioner, Dept.
of Correctional Services; Theresa A.
Knapp–David, Director, Classification and
Movement; and R. Woods, Superintendent,
Upstate Correctional Facility, Defendants.

No. 9:09–CV–240.
|
Feb. 18, 2010.

**Attorneys and Law Firms**

Jason R. White, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State
of New York, Brian J. O'Donnell, Esq., Asst. Attorney
General, of Counsel, Albany, NY, for Defendants.

*DECISION and ORDER*

DAVID N. HURD, District Judge.

 *1 Plaintiff, Jason R. White, commenced this civil rights
action in February 2009, pursuant to 42 U.S.C. § 1983.
By Report–Recommendation dated January 25, 2009, the
Honorable David E. Peebles, United States Magistrate
Judge, recommended that defendant's motion to dismiss
(Dkt. No. 10) be granted, and that plaintiff's complaint
in this action be dismissed without leave to replead. No
objections to the Report–Recommendation have been
filed.

Based upon a careful review of the entire file and
the recommendations of Magistrate Judge Peebles, the
Report–Recommendation is accepted and adopted in all
respects. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 10) is
GRANTED;

2. Plaintiff's complaint in this action is DISMISSED
without leave to replead; and

3. The Clerk is directed to file judgment accordingly and
close the file.

IT IS SO ORDERED.

JASON R. WHITE,

Plaintiff,

-v.-

BRIAN FISCHER, THERESA A. KNAPP–DAVID,
and R. WOODS,

Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Jason R. White, a New York State prison
inmate who is proceeding *pro se* and *in forma pauperis,*
has commenced this action pursuant to 42 U.S.C. §
1983, alleging deprivation of his civil rights. In his
complaint, plaintiff asserts that his transfer into special
housing unit ("SHU") disciplinary confinement at the
Upstate Correctional Facility, to serve what was originally
intended to be a three-month disciplinary sentence of less
restrictive keeplock confinement imposed while at another
facility, represented a deprivation of a liberty interest
without the requisite procedural due process. As relief
for the violation, plaintiff's complaint seeks an award of
compensatory damages in the amount of $25,000.

In response to plaintiff's complaint, defendants have
moved seeking its dismissal for failure to state a cause
of action upon which relief may be granted. In their
motion, defendants argue that plaintiff's allegations do
not demonstrate the existence of a meritorious due process
claim since, at best, it implicates a failure of prison officials
to comply with governing regulations regarding transfers
into an SHU unit, a matter not of constitutional concern,
noting further that plaintiff has no constitutional right
to be designated to a particular correctional facility or

to a desired security classification. Defendants also seek dismissal of plaintiff's claims against them based upon lack of personal involvement, and additionally assert their entitlement to qualified immunity from suit as a basis for their dismissal motion.

For the reasons set forth below, I find that White's complaint fails to set forth a plausible due process violation and that defendant Fischer is also entitled to dismissal of the claims against him based upon the lack of allegations showing of his personal involvement in the conduct allegedly giving rise to plaintiff's claims. I further recommend a finding that, even if plaintiff were able to plead a cognizable due process cause of action, defendants Knapp–David and Woods nonetheless should be granted qualified immunity from suit in this instance.

## I. *BACKGROUND* [1]

**\*2** Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"). *See generally* Complaint (Dkt. No. 1). At the times relevant to his claims plaintiff was designated first to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York, and later to the Upstate Correctional Facility ("Upstate"), located in Malone, New York. *Id.,* § 6.

On March 28, 2007, while confined at Auburn, plaintiff was found guilty following a Tier I II disciplinary hearing of engaging in violent conduct and refusing a direct order, in violation of disciplinary rules 104.11 and 106.10, respectively. [2] *See* Plaintiff's Memorandum (Dkt. No. 1–1) Exh. A. [3] As a result of that determination plaintiff was sentenced to serve three months of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges. *See id.*

On April 11, 2007, while serving his keeplock sentence at Auburn, White was processed out of that facility and, following completion of an inter-prison transfer process which included a stop at another facility, was transferred into Upstate on or about April 13, 2007. Complaint (Dkt. No. 1) § 6. At Upstate, plaintiff was assigned to a two-person cell in the facility's SHU to serve the balance of his disciplinary confinement sentence. [4] *Id.*

On April 23, 2007 plaintiff filed a grievance with prison authorities, arguing that his transfer into the SHU

at Upstate was not authorized by DOCS directives. Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. C. The grievance was denied by the facility's Inmate Grievance Review Committee ("IGRC"). Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff appealed the denial to defendant Woods, the Superintendent at Upstate, who upheld the IGRC's unfavorable determination by decision dated May 15, 2007. Complaint (Dkt. No. 1) § 6 at p. 4B. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff's further appeal of the matter to the DOCS Central Office Review Committee ("CORC") was likewise unsuccessful. *Id.* Exh. E.

Also on April 23, 2007, plaintiff sent a letter to the DOCS Commissioner Brian Fischer, complaining of the SHU designation. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. F. That letter was referred by Commissioner Fischer to defendant Theresa A. Knapp–David, the DOCS Director of Classification and Movement. Complaint (Dkt. No. 1) § 6 at pp. 4B–4C. In response, defendant Knapp–David wrote to the plaintiff on May 7, 2007, advising that his SHU assignment was in accordance with established DOCS procedures. Plaintiff's Memorandum at (Dkt. No. 1.1) Exh. G.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on February 27, 2009, and was thereafter granted leave to proceed *in forma pauperis.* Dkt. Nos. 1, 4. Named as defendants in plaintiff's complaint are Commissioner Fischer; Director Knapp–David; and Upstate Superintendent R. Woods. Complaint (Dkt. No. 1) § 3. Plaintiff's complaint asserts a single cause of action for deprivation of procedural due process. *Id.,* § 7.

**\*3** Following service, in lieu of answering plaintiff's complaint, defendants filed a motion to dismiss asserting a variety of grounds for the relief sought. Dkt. No. 10. In their motion defendants argue, *inter alia,* that plaintiff's complaint 1) does not implicate a cognizable due process violation, 2) plaintiff's complaint fails to establish their personal involvement in the deprivation alleged; and 3) in any event they are entitled to qualified immunity. [5] Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 13, which is now fully briefed and ripe for determination, and has been referred to me for the

issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* –––U.S. ––––, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570 127 S.Ct. at 1974). When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)).

### B. *Procedural Due Process*

**\*4** In their motion, defendants assert that because plaintiff's due process claim rests on alleged violations of DOCS regulations, his complaint in fact fails to assert a cognizable due process claim.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Inmates' liberty interests may arise out of the Due Process Clause of the Fourteenth Amendment, or state statute or regulation. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

Recognizing that lawful imprisonment necessarily restricts the rights and privileges of inmates, the Supreme Court has narrowly circumscribed the scope of liberty interests arising out of the Due Process clause to protect only the most basic liberty interests of prisoners. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869 (1983). Accordingly, the Due Process Clause does not guard against every change in the conditions of confinement having a substantial adverse impact on inmates, but only those conditions or restraints that "exceed[ ] the sentence in ... an unexpected manner." *Arce,* 139 F.3d at 333 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)).

In this instance plaintiff does not claim that he was denied procedural due process in connection with the disciplinary hearing that led to the imposition of a three-month period of keeplock confinement as a sanction. Instead, he argues that his due process rights were abridged after the sanction was imposed when, in violation of DOCS Directive No. 4933, [6] he was transferred from keeplock confinement at Auburn to an SHU cell at Upstate, and as a result required to endure a more restrictive confinement. Unfortunately for plaintiff, neither the Due Process Clause nor state statute or regulation give rise to a liberty interest in these circumstances.

Preliminarily, it is well recognized that an inmate has no constitutional right to be incarcerated at a particular correctional facility, "and transfers among facilities do not need to be proceeded by any particular due process procedure." *Halloway v. Goord,* No. 9:03–CV01524, 2007 WL 2789499, at * 5 (N.D.N.Y. Sept. 24, 2007) (Kahn, J. and Treece, J.) [7] (citing *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005)) (other citation omitted); *see also, Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir.2009) (per curiam); *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998). As a result, the constitution did not present any impediment to plaintiff's transfer to Upstate.

**\*5** Additionally, it is equally well established, as defendants now argue, that state regulations, including DOCS Directives, do not ordinarily confer constitutional rights sufficient to give rise to a due process claim. *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)) *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 (N.D.N.Y.2009). A state can, however, by statute or regulation confer a liberty interest which cannot be abridged without due process. *Black v. Lansberg,* No. 9:06–CV–1243, 2009 WL 3181111, at \*3 (Sept. 29, 2009) (Suddaby, J., adopting Report and Recommendation of Lowe, M.J.). Nonetheless, contrary to plaintiff's contention, DOCS Directive No. 4933 does not give rise to a cognizable liberty interest.

It should be noted that on at least four separate occasions, addressing the same issues raised by the plaintiff in this case, this court has held that an inmate's transfer from keeplock to SHU after being sentenced to serve time in keeplock does not implicate a cognizable liberty interest. *McEachin v. Goord,* No. 9:06–CV–1192, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J. and Treece, M.J.) (dismissing complaint alleging that plaintiff was unlawfully transferred from keeplock to SHU while serving disciplinary sentence); *Halloway,* 2007 WL 2789499 (granting summary judgment dismissing claim that plaintiff should have received hearing before transfer to Upstate after sentenced to keeplock at Elmira Correctional Facility); *Carlisle v. Goord,* No. 9:03–CV–296, 2007 WL 2769566, at \*2 n. 1 (N.D.N.Y. Sept. 21, 2007) (Scullin, S.J., adopting Report and Recommendation of Lowe, M.J.) (granting summary judgment finding that "an inmate has no liberty interest in not having his sentence of keeplock confinement at one prison converted to a sentence of SHU confinement at another facility without receiving a hearing regarding

the conversion."); and, *Chavis v. Kienert,* 9:03–CV–0039, 2005 WL 2452150, at \*9–10 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) (finding that transfer from keeplock at Coxsackie Correctional Facility to SHU at Upstate did not implicate a liberty interest). *See also, Holmes v. Grant,* No. 03–Civ. 3426, 2006 WL 851753, at \*18–19 (S.D.N.Y. mar. 31, 2006 (dismissing claim plaintiff's claim that disciplinary sentence was improperly converted from keeplock sentence to SHU). These decisions are premised upon the court's conclusion that a transfer from keeplock in one facility to SHU in another does not implicate a constitutionally protected liberty interest and that "New York has not created, by regulation or statute, any liberty interest in remaining in one particular prison[,]" noting that "the DOCS ... possesses sole discretion to determine 'where a [state] inmate will be housed.' " *Halloway,* 2007 WL 2789499, at \*5 (quoting *Grullon v. Reid,* No. 97 CIV. 7616, 1999 WL 436457, at \*10 (S.D.N.Y. Jun. 24, 1999)) (other citations omitted). These cases are indistinguishable from the case presently before the court.

**\*6** Moreover, contrary to the interpretation offered by the plaintiff, the court has read section 301.6 of DOCS Directive No. 4933 as "explicitly permitt[ing] keeplock sentences to be served in SHU and subject to the same restrictions and amenities ...." *McEachin,* 2008 WL 1788440, at \*4; *see also, Halloway,* 2007 WL 2789499, at \* 5 ("[N]ot only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same ... limitations.") and *Holmes,* 2006 WL 851753, at \* 19 ("Section 301.6 ... relat[es] to keeplock admissions and authorizes placement of inmates in SHU 'at a medium or minimum security correctional facility or *Upstate Correctional Facility* ... for confinement pursuant to disposition of a disciplinary (Tier II) or superintendent's (Tier II hearing.' ") (emphasis in original).

In view of the foregoing, it is clear that plaintiff's transfer from Auburn, where he was keeplocked, to SHU confinement at Upstate does not implicate a liberty interest arising out of either Due Process Clause, or state statute or regulation. According to plaintiff's complaint, he was sentenced to keeplock after a Tier III disciplinary hearing; he does not allege that he was denied due process in connection with that hearing. The Tier II I hearing that he was provided was all that was required by the constitution before he was sentenced to disciplinary confinement. *Holmes,* 2006 WL 851753, at \*19. Plaintiff

was entitled to no further procedure at the time of transfer to Upstate, and therefore cannot show that he was deprived of a protected liberty interest without due process of law. [8] *Id.* Accordingly, I recommend that plaintiff's complaint be dismissed for failure to state a cause of action.

### C. *Personal Involvement*

In their motion, defendants also challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Two of the three defendants, Brian Fischer and Robert Woods, appear to be named as defendants in their supervisory capacities, based solely upon their positions as the DOCS Commissioner and the Superintendent at Upstate, respectively. As supervisors, neither of those individuals can be liable for damages under section 1983 solely by virtue of their respective positions as supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v.. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the

wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds, sub nom., Ashcroft v. Iqbal,* ——U.S. ——, 129 S.Ct. 1937.; *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

### 1. *Commissioner Fischer*

**\*7** Aside from allegations centering upon his role as the DOCS Commissioner, which are clearly insufficient in and of themselves to establish his liability, plaintiff's claims against defendant Fischer appear to revolve around the letter written by him to the Commissioner on or about April 23, 2007, complaining of his SHU confinement at Upstate. That letter, it appears from the limited materials now before the court, was referred to defendant Knapp–David for response. It is well established that when the Commissioner receives a letter and forwards it on to another individual for investigation and a response, his or her involvement in the constitutional violation cannot be predicated solely upon those circumstances. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Rivera v. Fischer,* No. 08–CV–6505L, 2009 WL 2981876, at \*2 (W.D.N.Y. Sept. 18, 2009). I therefore recommend dismissal of plaintiff's claims against Commissioner Fischer on the basis of lack of his personal involvement.

### 2. *Superintendent Woods*

Plaintiff's claims against Superintendent Woods stand on slightly different footing. It is alleged that Superintendent Woods processed and affirmed the determination of the Upstate IGRC denying plaintiff's grievance regarding the relevant occurrences. His review of plaintiff's grievance arguably placed Superintendent Woods on notice of a constitutional violation, which was ongoing, at a time when he was potentially positioned to end the violation. On that basis I conclude that plaintiff has sufficiently alleged Superintendent Woods' personal involvement in the violation alleged to withstand defendants' dismissal motion. *See Charles v. New York State Dept. of Corr. Services,* No. 9:07–CV–1274, 2009 WL 890548, at \*5–9 (N.D.N.Y. Mar. 21, 2009) (Hurd, J. and DiBianco, M.J.).

### 3. Director Knapp–David

Plaintiff's complaint alleges that in her position as the DOCS Director of Classification and Movement, defendant Knapp–David would have reviewed and approved his transfer from Auburn into Upstate. That allegation is buttressed by both her position with the DOCS and the fact that plaintiff's letter regarding the matter was referred to defendant Knapp–David for response explaining why the transfer was proper under DOCS regulations. On this basis, I conclude that plaintiff has stated a plausible claim against defendant Knapp–David and her personal involvement in the constitutional deprivations alleged.

### D. *Qualified Immunity*

In their motion, defendants also assert entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) (citations omitted). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[ ] possessed." *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. ——, 129 S.Ct. 808, 815 (2009).

**\*8** In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. ——, 129 S.Ct. at 816. The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[9] *Kelsey,* 567 F.3d at 61, "the second step being whether the right is clearly established", *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d

415, 430 n. 9 (citing *Saucier* ).[10] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently concluded in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."[11] *Pearson,* 555 U.S. ——, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156 (citation omitted). When deciding whether a right was clearly established at the relevant time, a court should consider

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*9** *Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). The objective reasonableness test will be met, and qualified immunity enjoyed, where government officers of reasonable competence could disagree as to whether by his or her alleged conduct the defendant would be violating the plaintiff's rights. *Okin,* 577 F.3d at 433 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). "If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity." *Okin,* 577 F.3d at 433 (citing *Lennon v.. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995)).

Applying the *Saucier* two-step inquiry here, I have already determined that plaintiff has failed to state a plausible constitutional violation. Moreover, even if plaintiff were able to distinguish the existing precedent in this district and allege a protected liberty interest that required that plaintiff be provided with additional due process before his transfer to Upstate, I conclude that any such right was far from a clearly established and that a reasonable person in the circumstances of defendant Woods and defendant Knapp–David would not have appreciated that the transfer of plaintiff into SHU confinement at Upstate represented a potential deprivation of plaintiff's procedural due process rights beyond those addressed by the hearing officer. Accordingly, as an additional basis for dismissal, I recommend that both defendants Woods and Knapp–David be granted qualified immunity from suit.

IV. *SUMMARY AND RECOMMENDATION*
At the heart of plaintiff's complaint in this action is his contention that his due process rights and DOCS regulations were violated when he was transferred from keeplock confinement at Auburn into an SHU cell at Upstate. Since such a claim, it is well established in

this district, is not constitutionally cognizable, White has therefore failed to state a claim upon which relief can be granted. While plaintiff has failed to establish personal involvement on the part of Commissioner Fischer in an alleged deprivation and the claims against him should be dismissed on this additional basis, plaintiff has sufficiently alleged personal involvement on the part of defendant Knapp–David and R. Woods. Nonetheless, I find that those two defendants are entitled to qualified immunity from suit, providing an additional basis for dismissal of plaintiff's claims against them. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 10) be GRANTED, and that plaintiff's complaint in this action be DISMISSED, without leave to replead; and it is further

ORDERED that pending a final determination on defendants' dismissal motion, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**\*10** It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 624081

Footnotes

1    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964). I have also considered the exhibits attached to plaintiff's memorandum, which accompanied his complaint, to the extent that they are consistent with the allegations of his complaint. *See Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

2    The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. Tier III hearings concern the

most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

3    Plaintiff filed what he labeled as a "memorandum of law," with exhibits attached, in conjunction with his complaint. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his ... memorandum." *Rivera v. Selsky,* No. 9:05–CV–0967, 2007 WL 956998, at *1 n. 2 (N.D.N.Y. Jan. 5, 2007) (quoting *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

4    Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky,* No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

5    Defendant's also seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery in this matter pending final determination of their dismissal motion. Discerning no basis to conclude that plaintiff would be unduly prejudiced by such a stay, that application will be granted.

6    Section 301.6(a) of DOCS Directive No. 4933 permits an inmate confined in a medium or minimum security facility, or at Upstate, to be admitted into an SHU for various reasons, which can include confinement pursuant to a Tier II or III hearing disposition. Plaintiff asserts that because he was transferred from Auburn, a maximum security facility, into an SHU unit, that section does not apply. Interestingly, a prior version of DOCS Directive No. 4933 provided, in relevant part, that

> [a]n inmate who is assigned to keeplock status and who is transferred to a maximum security facility shall not be assigned to the special housing unit at the receiving facility. Such inmate shall be assigned to keeplock within general population and shall have the same rights and responsibilities as other keeplock inmate in that facility.

*Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998) (quoting prior version of 7 NYCRR § 301.6(h)).

7    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

8    Plaintiff alleges a litany of differences between the conditions experienced while in keeplock at Auburn and those in SHU at Upstate asserting, for example, that with regard to visits, he was required to travel to and from them in handcuffs, had to remain in handcuffs if he needed to use the restroom, and was not permitted to take photographs, and also that he did not have the same opportunities for social interaction with other prisoners and had to sleep with a light on. Plaintiff's Memorandum (Dkt.1–1) at pp. 11–12. As a matter of law, these alleged conditions can hardly be characterized as "exceed[ing] his sentence in an unexpected manner" or as imposing an "atypical and substantial hardship upon the [plaintiff] in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. "[T] fact that 'life in one prison is much more disagreeable than another does not itself signify that a Fourteenth Amendment liberty interest is implicated....'" *Halloway,* 2007 WL 2789499, at * 7 (quoting *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Moreover, even if a liberty interest were alleged, plaintiff was afforded all the process he was due, by way of a disciplinary proceeding, before the alleged deprivation. *Carlisle,* 2007 WL 2769566, at * 3.

9    If no constitutional right would have been violated were the allegations established, no further inquiry regarding qualified immunity is necessary. *Kelsey,* 567 F.3d at 61 (quoting *Saucier* ).

10   In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful." *Okin,* 577 F.3d at 433 n. 11 (citation omitted).

11   Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson,* —— U.S. ——, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524 (1991) (per curiam)).

---

**End of Document**    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3919650
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Andre Youngblood, Plaintiff,
v.
City of New York, Detective Louis
Pena, #6992, Officer Jesus Sanchez
#5644, C.O. TJ #19297, Defendants.

15 Civ. 3541(AT)(HBP)
|
Signed 06/27/2016

**Attorneys and Law Firms**

Andre Youngblood, Butner, NC, pro se.

Daniel Guillermo Saavedra, New York City Law
Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

ANALISA TORRES, District Judge

**\*1** Plaintiff *pro se*, Andre Youngblood, brings this action
pursuant to 42 U.S.C. § 1983, alleging violations of his
federal rights stemming from his March 10, 2015 arrest
at St. Barnabas Hospital in the Bronx. Defendants City
of New York and Detective Louis Pena ("Defendants")
move to dismiss the amended complaint pursuant to
Federal Rule of Civil Procedure 12(c). For the reasons
stated below, Defendants' motion is GRANTED in part
and DENIED in part.

## BACKGROUND [1]

On March 5, 2015, after sustaining a work-related injury,
Plaintiff was admitted to St. Barnabas Hospital with
"walking pneumonia and flexor tendon rupture of [his]
right hand." Am. Compl. ¶ 13, ECF No. 8; *accord* Pl.
Op. Br. at 2, ECF No. 37. On March 10, 2015, while
Plaintiff was awaiting surgery on his right hand, nine
police officers without "raid jackets or shields showing"
entered Plaintiff's hospital room with their guns drawn,
Pl. Op. Br. at 2; *see also* Am. Compl. ¶ 13, pursuant to

a warrant issued by a state magistrate judge in South
Carolina for the arrest of "Andri Youngblood," Pl. Op.
Br. at 2; *see also* Arrest Warrant, Answer, Ex. 1 at 1,
ECF No. 25-1 (describing "Andri Youngblood" as a black
male with a height of 5'10' and weight of 150 pounds). [2]
After being asked for his name, Plaintiff, who is an African
American, told the officers that his name was "Andre
Youngblood" and that they "had the wrong man." Pl. Op.
Br. at 3; *accord* Am. Compl. ¶ 6. Plaintiff contends that
the officers nonetheless identified Plaintiff as the person
named in the warrant on the basis that "Plaintiff was a
black male," which "was enough for Defendant Pena,"
despite the availability of multiple forms of identification
stating Plaintiff's name to be "Andre Youngblood," the
warrant's lack of a picture, and the officers' access to
Plaintiffs pictures and fingerprints from his past brushes
with the law. *Id.* at 1-3.

**\*2** Upon identifying Plaintiff, Pena spoke with the
attending physician, "Dr. Smith," who "stated in no
uncertain words that Plaintiff needed to stay in the
hospital." Pl. Op. Br. at 4. Plaintiff contends that Pena
then "lied" to Dr. Smith, "stating that Plaintiff, was going
to be arraigned, then brought back to the hospital to
have his needed hand surgery." *Id.* As a result, Plaintiff
was "forcibly discharged from medical care." Am. Compl.
¶ 15. Specifically, the officers "took over the hospital
operations" and demanded that Plaintiff's intravenous
tube be removed; confiscated Plaintiff's pain and seizure
medication, as well as the antibiotics prescribed for
Plaintiff's walking pneumonia; and took Plaintiff into
custody. Am. Compl. ¶ 13; Pl. Op. Br. at 3-4. Plaintiff
was brought to the 42nd Precinct in the Bronx "in a
drug [g]ed daze, continuing to assert that he was not
Andri Youngblood." Pl. Op. Br. at 4. At his arraignment,
Plaintiff again stated his name, and Pena told the
arraigning judge that "he had checked and he had the
'right guy.' " *Id.*

Plaintiff has been incarcerated since March 2015, but did
not receive surgery on his right hand until late summer
2015. *Id.* at 4-5. Plaintiff contends that he still needs
additional surgery; will "never regain full use of his
hand" due to the "needless delays" he faced in receiving
surgery; that he "would not have the use of his
hand" if he had received surgery in March 2015 as
originally scheduled; and that his carpentry skills have
been rendered useless due to his hand injury. *Id.* at 5.
Plaintiff alleges that as a result of Defendants' actions,

Case 5:18-cv-01215-MAD-TWD Document 4 Filed 11/07/18 Page 48 of 51
Youngblood v. City of New York, Not Reported in F.Supp.3d (2016)
2016 WL 3919650

he has suffered, *inter alia*, "bodily injuries, me[n]tal anguish, shock, fright, apprehension, embarrassment, and humiliation, and deprivation of his constitutional rights." Am. Compl. ¶ 17.

## DISCUSSION

### I. Rule 12(c) Standard
To survive a Rule 12(c) motion for judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to [Rule 12(b)(6)] motions to dismiss applies to [Rule 12(c)] motions for judgment on the pleadings."). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In considering a Rule 12(c) motion, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *Johnson*, 569 F.3d at 43.

The court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). "The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks, citation, and brackets omitted). Although the court is "obligated to draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [the court] cannot invent

factual allegations that [the plaintiff has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Finally, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).

### II. Claims Against the Individual Defendants
**\*3** Liberally construed, Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for false arrest; malicious abuse of process; excessive force; and deliberate indifference to serious medical needs. Am. Compl. ¶¶ 18-40. The Court will address each claim in turn.

#### A. False Arrest

To state a claim for false arrest under § 1983, a plaintiff must allege: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (construing New York state law); *see also Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (holding that the elements of a false arrest claim under § 1983 are "substantially the same" as the elements of a false arrest claim under New York state law). However, "[w]here an arrest is made pursuant to a warrant, there can be no claim for false arrest or unlawful imprisonment." *Jones v. Trump*, 971 F. Supp. 783, 788 (S.D.N.Y. 1997); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007).

Plaintiff does not dispute that he was arrested pursuant to a warrant, but argues that he is not the individual named in the warrant. "A mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the officers reasonably mistook the arrestee for the person named in the warrant." *Gonzalez v. City of New York*, 69 Fed.Appx. 7, 9-10 (2d Cir. 2003) (summary order) (citing *Hill v. California*, 401 U.S. 797, 804 (1971)). Because there is insufficient evidence at this preliminary stage to determine whether the officers reasonably believed that Plaintiff was the individual identified in the warrant and because Plaintiff has otherwise stated a plausible false

arrest claim, Defendants' motion as to the false arrest claim is DENIED.

### B. Malicious Abuse of Process

To state a claim for malicious abuse of process under § 1983, a plaintiff must allege that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2004). As reflected in this pleading standard, a malicious abuse of process claim requires that legal process be abused to achieve a collateral objective beyond or in addition to legitimate ends, such as "extortion, blackmail or retribution." *See Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 343 N.E.2d 278, 283 (N.Y. 1975); *see also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). That Defendants sought Plaintiff's arrest and prosecution does not constitute such a "collateral objective." *See Hauser v. Bartow*, 7 N.E.2d 268, 270 (N.Y. 1937) (finding no abuse of process because "whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it"). Accordingly, because Plaintiff does not identify any collateral objective outside legitimate ends of process that Defendants sought to achieve, [3] Plaintiff's malicious abuse of process claim is DISMISSED.

### C. Excessive Force

**\*4** "[C]laims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The "reasonableness" question is "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The inquiry involves consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Reasonableness "must be judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[A] motion to dismiss an excessive force claim is appropriate if, accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances." *Messina v. Mazzeo*, 854 F. Supp. 116, 128-29 (S.D.N.Y. 1994).

Plaintiff's only allegations regarding use of force are that he was "forcibly discharged from medical care," that "the level of force employed by defendants was objectively unreasonable," and that due to the "conduct of defendants, [P]laintiff ... was subjected to excessive force and sustained, inter alia, physical and emotional injuries." Am. Compl. ¶¶ 15, 29, 30. Plaintiff's allegations are no more than "labels and conclusions," *Twombly*, 550 U.S. at 555, and do not plausibly state an excessive force claim. Beyond the bare contention that Defendants used objectively unreasonable force resulting in physical and emotional injury, Plaintiff does not plead any facts describing, *inter alia*, the nature of the force used or the injuries caused by that use of force. Accordingly, Plaintiff's excessive force claim is DISMISSED without prejudice.

### D. Deliberate Indifference to Serious Medical Needs

A claim of deliberate indifference to the serious medical needs of a pretrial detainee in state custody is brought under the Due Process Clause of the Fourteenth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 724 (S.D.N.Y. 2015). To state a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege that he "had a 'serious medical condition' " and that "it was met with 'deliberate indifference,' " meaning that the defendant "kn[ew] of and disregard[ed] an excessive risk to plaintiff's health or safety and was "both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and ... also dr[e]w the inference." *Caiozzo*, 581 F.3d at 72 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (alterations in original).

Plaintiff's injuries constitute a "serious medical condition" within the meaning of the deliberate indifference standard. Plaintiff contends that he suffered a ruptured flexor

Case 5:18-cv-01215-MAD-TWD    Document 4    Filed 11/07/18    Page 50 of 51

tendon in his right hand that went untreated for months, such that he has suffered pain, has been unable to regain full use of his hand, and cannot perform the carpentry skills that he previously used to support himself. Pl. Op. Br. at 5. These injuries, which have caused Plaintiff significant pain and impair both his daily activities and ability to work, constitute a "serious medical condition." *See, e.g., Vining v. Dep't of Correction*, No. 12 Civ. 3267, 2013 WL 2036325, at *4-5 (S.D.N.Y. Apr. 5, 2013) ("Application of settled Second Circuit doctrine points toward the conclusion that chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis."); *see also Caiozzo*, 581 F.3d at 72 (holding that deliberate indifference claims "should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment").

**\*5** Plaintiff does not, however, establish that Defendant Pena or any of the unnamed officers acted with deliberate indifference to his serious medical needs. Although the facts alleged establish that Pena knew that Plaintiff would be undergoing hand surgery and needed to remain in the hospital, they do not show that Pena knew of and disregarded an "excessive risk" to Plaintiff's health—merely that Pena may have been aware of some risk to Plaintiff's health. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he charged official [must] act or fail to act while actually aware of a substantial risk that serious ... harm will result."). Plaintiff does not, for example, plead facts demonstrating that Pena was aware that removing Plaintiff from the hospital would result in lasting and serious injury to Plaintiff's hand or that Pena deliberately disregarded such a risk when forcibly discharging Plaintiff from the hospital. Moreover, to the extent that Plaintiff seeks to premise his deliberate indifference claim on the delays that he faced in receiving medical attention while incarcerated, Plaintiff does not show how such delays resulted from the actions or failure to act of Pena or his fellow officers, *Salahuddin*, 467 F.3d at 280, as opposed to prison officials or medical professionals within the prison system—none of whom have been named as defendants in this action. [4]

Accordingly, Plaintiff's deliberate indifference claim is DISMISSED without prejudice.

III. <u>Claims Against the City of New York</u>

A local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* A *Monell* claim requires a plaintiff to plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

Plaintiff contends that the City's customs and policies include "arresting individuals regardless of probable cause," "[u]tilizing excessive force in executing said arrests," and "[f]alsifying evidence to cover up police misconduct," Am Compl. ¶ 33, and that these customs and policies were the "direct and proximate cause" of his injuries, *id.* ¶ 35. Without more, Plaintiff's bare allegations of the existence of a custom and policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim. *See Carpinone v. City of New York*, No. 11 Civ. 2074, 2012 WL 760073, at *2 (S.D.N.Y. Mar. 9, 2012) ("Plaintiff offers no facts which would render plausible his allegations of a policy or custom within the New York City Police Department that was affirmatively linked to the purported constitutional violations he suffered."). Accordingly, Plaintiff's claims against the City of New York are DISMISSED.

## CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED in part and DENIED in part. [5] However, because "a liberal reading of the complaint ... indicat[es] that a valid claim might be stated," *Cuoco*, 222 F.3d at 112 (internal quotation marks and citation omitted), the Court grants Plaintiff leave to file an amended complaint by **July 25, 2016** to address the pleading deficiencies described above relating to Plaintiffs excessive force and deliberate indifference claims. [6] If Plaintiff fails to file an amended complaint by **July 25, 2016** and does not show good cause to excuse such failure, the claims shall be dismissed with prejudice. *See* Fed. R. Civ. P. 41(b).

**\*6** Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motions at ECF Nos. 32 and to mail a copy of this order and all unpublished cases cited herein to Plaintiff *pro se.*

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3919650

Footnotes

1  The following facts are taken from Plaintiff's amended complaint and opposition papers and are accepted as true for purposes of this motion. *See, e.g., Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (considering facts alleged in affidavit submitted by *pro se* plaintiff in opposition to motion to dismiss); *Flores v. N.Y.C. Human Res. Admin.,* No. 10 Civ. 2407, 2011 WL 3611340, at \*1 n.1 (S.D.N.Y. Aug. 16 2011) ("Because of [plaintiff's] *pro se* status, ... the Court may consider factual allegations [plaintiff] makes in her opposition papers, in addition to the allegations in the complaint...."); *see also Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to [Rule 12(b)(6)] motions to dismiss applies to [Rule 12(c)] motions for judgment on the pleadings.").

2  Although not attached as an exhibit to Plaintiff's amended complaint, the Court considers the South Carolina arrest warrant in ruling on Defendants' Rule 12(c) motion as Plaintiff relies on the arrest warrant and incorporates it by reference in his amended complaint. *See In re Thelen LLP,* 736 F.3d 213, 219 (2d Cir. 2013). The Court has not considered any other exhibits to Defendants' answer as "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies" in ruling on a Rule 12(c) motion. *Id.*

3  Plaintiff makes the conclusory allegation that "Defendants arrested [P]laintiff in order to [achieve] a collateral objective outside the legitimate ends of the legal process," but does not identify what collateral objective Defendants sought to achieve. Am. Compl. ¶ 25.

4  To the extent that Plaintiff premises his deliberate indifference claim on the officers' confiscation of his antibiotics and pain and seizure medication, the claim fails as Plaintiff has not pleaded injury resulting from the confiscation.

5  Plaintiff characterizes his opposition brief as a " 'Roseboro Response" to Defendants' motion to dismiss and [Plaintiff's] motion for Summary Judg[ ]ment." Pl. Op. Br. at 1. To the extent that Plaintiff in fact intended to move for summary judgment, the motion is DENIED without prejudice to renewal after the close of discovery, as Plaintiff does not cite to any evidence in the factual record to support a summary judgment motion.

6  Plaintiff also claims violations of the First Amendment and Equal Protection Clause, but provides no detail as to how his rights under those constitutional provisions were violated. Accordingly, the claims are DISMISSED. To the extent that Plaintiff wishes to maintain these claims, Plaintiff is granted leave to address these pleading deficiencies in his amended complaint.

---